*529 OPINION OF THE COURT
Richard A. Goldberg, J.
Defendants S.C. Johnson & Son, Inc. (SCJ) and Impact Media Network, Inc. (IM), and a third party entered into a sampling and distribution contract on March 3, 1994. Under the terms of the contract, IM was to distribute samples of SCJ’s aerosol insecticide, Raid Max Roach & Ant Killer (Raid Max), nationwide "to areas with the predominant household profile: Spectral lifestyles-downscale urban and midscale urban melting pot”, including the New York metropolitan area. On or about June 9, 1994, IM distributed Raid Max samples, enclosed in plastic, "child-resistant packaging”, to apartments in the Vandeveer Housing Project, Brooklyn, New York, by hanging them on the apartment doorknobs. On June 9, 1994, plaintiff Garfield Stephenson, an eight-year-old boy, suffered second- and third-degree burns when an 11-year-old boy, by applying the flame of a cigarette lighter to the spray from a sample can of Raid Max, created a "blowtorch” and applied the torch to plaintiff’s back. The 11-year-old boy was charged with first degree assault.
Plaintiff and his mother subsequently brought suit against SCJ and IM, alleging negligence in the distribution of the Raid Max samples in areas where children were present, and against Foster Apartments Group (Foster), the property manager of the subject premises, alleging negligence in the maintenance and control of the premises. Foster cross-claimed against SCJ and IM. IM cross-claimed against SCJ; IM subsequently discontinued its cross claim and SCJ’s counsel was substituted as counsel for IM.
SCJ and IM now move for summary judgment dismissing the complaint on the grounds that the intentional and criminal act of plaintiff’s attacker was unforeseeable as a matter of law, thereby severing the causal connection between plaintiff s injuries and any negligence of these defendants.
In support of their motion, SCJ and IM submit the affidavit of Gary Van Domelen, counsel to SCJ. Mr. Van Domelen states that, based upon his personal knowledge "there are no reports, claims or lawsuits either currently pending or previously pending which involve any person (adult or child) assaulting another person by applying a lighter or matches to any aerosol product designed, manufactured, distributed and/or sold by this defendant * * * I personally directed that a search be undertaken at S.C. Johnson & Son Inc. to determine whether *530 there have ever been any claims or lawsuits concerning the type of event alleged by plaintiff here, specifically the application of a lighter to an aerosol product to create a 'blow torch’. The results of that search also reveal that there have never been such claims similar to the occurrence in this case concerning any S.C. Johnson & Son Inc. aerosol product.”
In opposition, plaintiffs contend that the issue of the foreseeability of the intervening act must be left to a jury; that "[djefendants have exclusive knowledge of the number of times Raid Max and/or Defendants Similar products are reported to Defendants * * * to have been used in ways similar to the occurrence in question”; that material facts relating to the flammability of Raid Max are within SCJ’s exclusive control, thereby precluding the granting of summary judgment; and that SCJ, knowing the propensity of children to misuse products in all manner of inventive ways, encased the Raid Max in child-proof plastic packaging, and thus it is reasonable to conclude that defendants foresaw the acts of the assailant. Plaintiffs also submit the affidavit of Jan M. Burte, Ph D, a licensed clinical psychologist, who opines, inter alla, that "[ajdolescents are likely to pick up objects such as roach spray cans and use them in ways that they may have seen other aerosol sprays used on television or movies* * * Seeing the cans hung on the doors, left in the lobby and not properly put away may have suggested to this particular adolescent that the roach spray was available for his use * * * Adolescents are at an age where they are likely to explore for new experiences. Further, because the nature of an adolescent is to rebel and seek out danger, leaving this aerosol roach spray accessible to so many adolescents is risking temptations to which this portion of our population is likely to yield. Since the incident occurred in a poor city area it is highly likely that aerosol cans left on the doors and in the lobbies of a large apartment complex will be used as toys or weapons and for exploratory experiences. Poor inner city children have less structure in their lives and will be more inclined to experiment with objects they find. Additionally, because of the combination of a lack of inner city programs which would provide more of a structured environment and a lack of supervision due to working parents not having the income to afford to provide them with a structured environment, leaving the aerosol can of roach spray accessible to these adolescents is even more dangerous.” Defendant Foster cross-moves for summary judgment dismissing the complaint, adopting and incorporating by refer *531 ence the factual and legal arguments set forth in SCJ’s and IM’s motion.
The leading case in New York regarding the intervention of the acts of a third person between a defendant’s negligence and a plaintiffs injuries (Derdiarian v Felix Contr. Corp., 51 NY2d 308 [1980]) holds that such acts do not necessarily sever the causal connection. If "the intervening act is a normal or foreseeable consequence of the situation created by the defendant’s negligence” the causal connection is not broken. (Supra, at 315.) "Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences * * * these issues generally are for the fact finder to resolve”. (Supra.) The Court of Appeals recognized, however, that "[i]f the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant’s conduct, it may well be a superseding act which breaks the causal nexus”. (Supra.) In such cases, "where only one conclusion may be drawn from the established facts * * * the question of legal cause may be decided as a matter of law”. (Supra.) As the Court noted, these "cases generally involve independent intervening acts which operate upon but do not flow from the original negligence”. (Supra.) Thus, the Court of Appeals held that the failure of a motorist to timely take his antiepileptic medication was not, as a matter of law, a superseding event which broke the link between a contractor’s failure to properly secure a roadway construction site and the injuries the plaintiff suffered when the motorist lost consciousness, allowed his vehicle to enter the work site and strike plaintiff and a kettle of boiling liquid and plaintiff was splattered by the boiling liquid. (Supra, at 316.)
New York courts also consistently hold that if the intervening act is either intentional or criminal, the same standard of foreseeability is to be applied to such act as that applied to acts of negligence. (See, e.g., Kush v City of Buffalo, 59 NY2d 26 [1983]; Nallan v Helmsley-Spear, Inc., 50 NY2d 507 [1980].) "An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant’s negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant”. (Kush v City of Buffalo, 59 NY2d, at 33.) Thus, this court must decide whether, as a matter of law, the assailant’s acts were either so extraordinary, or so attenuated from any negligence of the defendants as to relieve the defendants of liability.
*532 The first question before this court is whether the act in question is the normal result of defendant’s negligence* such that a reasonable person should have foreseen these consequences. The fact that such an act may be conceivable, as this act certainly is since it did occur, does not necessarily make it foreseeable. (Dyer v Norstar Bank, 186 AD2d 1083 [4th Dept 1992].) What may perhaps be foreseeable, normal or ordinary in this case would be, for example, an injury to plaintiffs eyes caused by the spraying of an aerosol product into them. Such would be a "foreseeable risk associated with the original negligence”, as in Derdiarian (supra), where "[a] prime hazard associated with such dereliction [i.e., the failure to safeguard the excavation site] is the possibility that a driver will negligently enter the work site and cause injury to a worker”. (Derdiarian v Felix Contr. Corp., supra, 51 NY2d, at 316.) Under this analysis, the manner of the driver’s negligence becomes irrelevant. The ultimate injury to Derdiarian is the natural consequence of the failure to safeguard the excavation site. While such an act as we have here may have been depicted on television or in movies, it does not follow that the law must give credence to the argument that children are natural copycats to the degree that any such depicted violent, criminal or sadistic act may then naturally be translated into events in the real world. If that were the case, children’s cartoons would determine the limits of foreseeability and liability would be expanded beyond the point of reason.
Further, plaintiffs essentially ask that this court carve out a rule of foreseeability pertaining exclusively to poor, inner city adolescents: Dr. Burte’s affidavit stresses the susceptibility of such adolescents to use aerosol cans as toys or weapons and she opines that the incident occurred because the aerosol cans were easily accessible to this type of adolescent. The determination of foreseeability cannot rest on considerations of social or economic class. "Normal and usual” cannot, under the law, have different meanings depending upon the wealth or poverty of the intervening actor. In short, we cannot have one rule of *533 law for inner city projects and another for suburbia. Not only would the creation of such a rule be abhorrent to public policy as an unreasonable stigmatization of an underprivileged group, but it would also ignore the reality that anyone inclined to create such a blowtorch is readily capable of doing so by obtaining, by purchase, theft or other action, any flammable aerosol product and applying a flame to the spray. Any adolescent, so inclined, could as easily have gone to his or her parent’s pantry or medicine cabinet or to a store, obtained a flammable aerosol spray can and used it as a weapon in similar fashion.
In determining whether the assault is so attenuated from the defendants’ negligence that it breaks the causal nexus, Judge Cardozo is, as always, instructive. When a small child was killed by a explosion caused by blasting caps negligently stored by defendant in a public place and in violation of ordinance, Cardozo detailed the intervening acts of "[b]oys [who] discovered the hidden caps, stole a box, carried it to their home a half a mile away, and killed a playmate”. (Perry v Rochester Lime Co., 219 NY 60, 64 [1916].) As Cardozo noted, "a series of new and unexpected causes intervened and had to intervene” before the injury occurred. (Supra.) This is precisely the case here where the young assailant obtained a can of Raid Max, which had to have been cut out from a sealed plastic container, obtained a cigarette lighter, applied the flame of the lighter to the spray of the aerosol, and sought out and intentionally burned plaintiff. This series of acts, all necessary to result in plaintiffs injury, demonstrates "[t]he remoteness of the relation” between defendants’ negligence and plaintiffs injury. (Supra, at 65.) This is clearly a case where "independent intervening acts which operate upon but do not flow from the original negligence” proximately caused, to the exclusion of defendants’ negligence, plaintiffs injuries. (Derdiarian v Felix Contr. Corp., supra, 51 NY2d, at 315; see also, Ventricelli v Kinney Sys. Rent A Car, 45 NY2d 950 [1978]; Falcone v City of New York, 170 AD2d 575 [2d Dept 1991]; Santiago v New York City Hous. Auth., 101 AD2d 735 [1st Dept 1984], affd 63 NY2d 761 [1984]; Santiago v VIG Corp., 201 AD2d 337 [1st Dept 1994].) Here, the acts of the intervening third party — the 11-year-old boy — and the injury he caused the plaintiff are both extraordinary and attenuated from any negligence of the defendants.
The above, however, does not terminate this court’s analysis. Intervening acts may be so improbable as to make the ultimate injury an unforeseeable consequence of the original negligence *534 thus insulating the tortfeasor from liability, unless the tortfeasor knew or should have known of similar past occurrences. Since such awareness lies peculiarly within the ken of the tortfeasor it is incumbent upon the tortfeasor to demonstrate, or at least allege, such lack of knowledge when seeking judgment on the ground that the consequences of its negligence were not foreseeable. If any of the defendants had knowledge of prior similar incidents, no matter how improbable they may seem in the ordinary course of events, the intervening assault could not sever the causal nexus as a matter of law, for defendants’ basis for claiming unforeseeability would surely be "the subject of varying inferences” (Derdiarian v Felix Contr. Corp., 51 NY2d, at 315, supra) and thus a question for the jury. (See, e.g., Ospina v City of New York, 214 AD2d 551 [2d Dept 1995]; Nallan v Helmsley-Spear Inc., 50 NY2d 507, supra.)
Thus, although this incident may be unforeseeable as a normal consequence of the situation created by defendant’s negligence it cannot be said as a matter of law that the causal nexus is severed if any of these defendants had actual knowledge of similar occurrences. SCJ has submitted an affidavit attesting to its lack of knowledge of any such prior incidents. Thus, because the torching of plaintiff’s back was not a normally foreseeable consequence of SCJ’s negligence and because it had no actual knowledge of such incidents in the past, any negligence on its part was not a proximate cause of plaintiff’s injuries, and that defendant cannot be held liable for plaintiff’s injuries. (Dyer v Norstar Bank, 186 AD2d 1083, supra.) SCJ is therefore entitled to summary judgment.
Significantly, no such affidavit has been submitted on behalf of IM, which is in the business of arranging and coordinating sampling distributions of consumer products for various manufacturers, nor has any such affidavit been submitted on behalf of the landlord Foster, who is in a much better position to assess the likelihood of such criminal behavior of tenants in, or visitors to, its building. It is inconceivable that such a bulky product could have been brought into the housing project and placed on the hallway side of all the apartment doors without the landlord’s representative observing it or at the very least becoming aware of it very quickly. Whether flammable substances had been intentionally ignited in public areas of this project before or used intentionally to assault persons in the premises is peculiarly within the ken of the landlord and its security operation. Here, neither IM nor the landlord has chosen to address this issue but relies instead on the papers *535 submitted on behalf of SCJ. Foster and IM, having failed to submit any evidence of their lack of knowledge of such incidents, have thus failed to make out a prima facie case for summary judgment.
SCJ’s motion for summary judgment is granted. IM’s motion for summary judgment is denied. Foster’s cross motion for summary judgment is denied and its cross claim against SCJ is dismissed.

 This discussion assumes that SCJ and IM were negligent. SCJ and IM in their moving papers have elected to concede negligence for the purpose of this motion and rely solely on the claim that the intervening act of the assailant was unforeseeable as a matter of law. This court, however, while limited to the issues as presented by the parties, is not convinced that any such original negligence existed in the distribution of such a product by these defendants. (See, e.g., Elsroth v Johnson & Johnson, 700 F Supp 151 [SD NY 1988].) Absent such original negligence, questions as to the foreseeability of intervening acts would be moot.