543 S.E.2d 338

**Nina R. HARBAUGH, Administratrix of the Estate of Benjamin Michael Cool, deceased, Plaintiff Below, Appellant,**

**v.**

**Christopher COFFINBARGER, individually; Victor Coffinbarger and Ann Coffinbarger, individually and in their capacity as parents and guardians of Christopher Coffinbarger; Dwight Wilkins, Joyce Wilkins; and Shalo Hess, Defendants Below, Appellees.**

**No. 26557.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 31, 2000.

Decided Dec. 12, 2000.

Laura R. Rose, Esquire, Martinsburg, for Appellant.

Patrick J. Nooney, Esquire, Nooney & Doyle, Hagerstown, MD, for C. Coffinbarger.

Catherine D. Munster, Esquire, Michael J. Novotny, Esquire, McNeer, Highland, McMunn & Varner, Clarksburg, for V. & A. Coffinbarger.

Douglas S. Rockwell, Esquire, Joseph L. Calrider, Esquire, Martin & Seibert, Charles Town, for D. & J. Wilkins.

PER CURIAM:

This is an appeal by Nina R. Harbaugh, as the administratrix of the estate of Benjamin Michael Cool (hereinafter "Appellant") from an order of the Circuit Court of Berkeley County granting summary judgment to Christopher Coffinbarger, individually; Victor and Ann Coffinbarger, individually and in their capacity as parents of Christopher Coffinbarger; Dwight and Joyce Wilkins; and Sherry (Shalo) Hess (hereinafter "Appellees"). The Appellant contends that the lower court erred by granting summary judgment prior to completion of discovery and by concluding that no genuine issues of material fact existed. The Appellees maintain that the Appellant failed to follow the proper procedure to extend discovery and further contend that the lower court was correct in finding no genuine issues of material fact.

We affirm the determination of the lower court.

## I. Facts

In July 1994, Appellees Dwight and Joyce Wilkins departed their home in Martinsburg, West Virginia, to attend a wedding in Michigan. Mr. and Mrs. Wilkins permitted their fourteen-year-old daughter, Shelly Wilkins, to remain at home in the care of Mrs. Wilkins' nineteen-year-old niece, Sherry (Shalo) Hess.

During the Wilkins' absence, Shelly Wilkins and Sherry Hess hosted a party attended by the decedent, eighteen-year-old Benjamin Cool. Another guest, Appellee Christopher Coffinbarger, brought a .38 caliber revolver to the party. During a conversation occurring in the kitchen of the home, Mr. Cool sustained a fatal head wound by engaging in Russian Roulette with Mr. Coffinbarger's gun. According to the testimony of witnesses, Mr. Cool asked Mr. Coffinbarger for the gun, unloaded and then re-loaded the gun with one bullet, spun the cylinder, placed the gun to his head, and pulled the trigger once. When the bullet failed to discharge, Mr. Cool spun the cylinder again and pulled the trigger again, killing himself.

The Appellant instituted the underlying civil action, and discovery was undertaken. The Appellees presented the lower court with their motions for summary judgment, and a hearing was conducted on January 5, 1998. The lower court granted summary judgment by order dated May 19, 1998, ruling that Mr. Cool's act of twice placing the loaded revolver to his head and pulling the trigger was an intervening cause which prevented liability from being imposed upon any defendant. The lower court emphasized that the statements of all witnesses[1] indicated that Mr. Cool was acting alone when pulling the trigger, and the court reasoned as follows:

Mr. Cool then placed the revolver to his head and pulled the trigger. It clicked. Mr. Cool placed the gun to his head a second time and pulled the trigger. It discharged, killing him....

....

[T]he Court finds that it is an inescapable fact that the decedent voluntarily shot himself....

....

Mr. Cool's actions constitute an intervening superseding cause of his death which precludes all Defendants from liability....

The lower court further stated that "the action taken by the adult decedent... is of such obvious consequence that it supercedes any other possible effect of another's negligence."

On appeal, the Appellant alleges that the lower court granted summary judgment prior to the completion of necessary discovery. The Appellant contends that a dispute may have erupted between the decedent and Mr. Coffinbarger immediately before the shooting,[2] and that the depositions of Lisa Santana and Terry White should have been taken prior to submission of this matter to the lower court for a summary judgment determination. The Appellant emphasizes the significance of witness testimony in a case in which physical evidence is limited due to the loss of the handgun by police, the failure to perform an autopsy, and the absence of fingerprinting or testing for gunpowder residue. The Appellant also directs this Court's atten-

---

**1.** The witnesses present at the time of the shooting were Lisa Schoppert Santana, Terry C. White, Jr., Shelly Wilkins, and Christopher Coffinbarger. The affidavits of Lisa Schoppert Santana and Terry C. White, Jr., were before the lower court, and the depositions of Shelly Wilkins and Christopher Coffinbarger were before the lower court. The affidavits of Mr. White and Ms. Santana, as well as their statements to the police, indicated that Mr. Cool was in sole physical possession of the gun at the time of discharge and that he acted alone in pulling the trigger. The affiants also indicated that there were no heated discussions between Mr. Cool and any other persons prior to the firing of the fatal wound by Mr. Cool. The depositions of Ms. Wilkins and Mr. Coffinbarger also assert that Mr. Cool was acting alone as he pulled the trigger.

**2.** The Appellant bases this speculation primarily upon evidence of holes in the kitchen wall behind the seat occupied by the decedent immediately prior to his death. The Appellant submits that such holes indicate a possible struggle of some sort. Christopher Coffinbarger testified during his deposition, however, that he struck the wall with his fists in frustration after the decedent killed himself.

tion to the conjecture forwarded by its expert, Mr. William Wenitsky, to the effect that the entrance and exit wounds on the decedent were inconsistent with a self-inflicted injury. That same expert witness later admitted that such a determination was beyond his area of expertise and that there were no facts to substantiate any claim that anyone else's finger was on the trigger of the .38 caliber revolver at the time the trigger was pulled.

■ It is the obligation of this Court to review this summary judgment issue *de novo*, as provided in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994): "A circuit court's entry of summary judgment is reviewed *de novo*."

## II. Appellant's Contention that Summary Judgment was Premature Based Upon Lack of Complete Discovery

■ In syllabus point three of *Painter*, this Court explained that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 3. In conducting that evaluation, the trial court necessarily depends upon the proper presentation of evidence by both the party asserting that summary judgment is proper and the party resisting such motion. We explained in *Painter* that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 192–93, 451 S.E.2d at 758–59 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Indeed,

> [t]o meet this burden, the nonmovant must identify specific facts in the record and articulate the precise manner in which that evidence supports its claims. As to material facts on which the nonmovant will bear the burden at trial, the nonmovant must come forward with evidence which will be sufficient to enable it to survive a motion for directed verdict at trial. If the non-

moving party fails to meet this burden, the motion for summary judgment *must* be granted. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317, 328 (1993); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695, 713 (1990).

*Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 699, 474 S.E.2d 872, 879 (1996). As the United States Supreme Court succinctly stated, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ In syllabus point three of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), we explained the obligations of the party opposing summary judgment:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either: (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Rule 56(f) of the West Virginia Rules of Civil Procedure provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This Court recognized the indispensable role of the Rule 56(f) motion in syllabus point

three of *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987):

> Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to *W.Va.R.Civ.P.* 56(f) and obtain a ruling thereon by the trial court. Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court.

▮ In *Powderidge,* this Court stated that "Rule 56 does not impose upon the circuit court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Nor is it our duty to do so on appeal." 196 W.Va. at 700, 474 S.E.2d at 880. In permitting a party opposing summary judgment some degree of latitude in complying with the mandates of Rule 56(f), this Court explained as follows in syllabus point one of *Powderidge:*

> An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. When a departure from the rule occurs, it should be made in written form and in a timely manner. The statement must be made, if not by affidavit, in some authoritative manner by the party under penalty of perjury or by written representations of counsel. At a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

196 W.Va. at 695, 474 S.E.2d at 875, syl. pt. 1.

In *Payne's Hardware & Building Supply, Inc. v. Apple Valley Trading Co.,* 200 W.Va. 685, 490 S.E.2d 772 (1997), we considered the effects of failure to seek relief through Rule 56(f) and determined that the lower court had not abused its discretion in denying a motion to reconsider its grant of summary judgment, where parties opposing summary judgment failed to file counter-affidavits and did not avail themselves of procedures concisely articulated in Rule 56(f) for requesting additional time for discovery. *Id.* at 690–91, 490 S.E.2d at 777–78; *see also Harrison v. Davis,* 197 W.Va. 651, 478 S.E.2d 104 (1996).

▮ Upon a review of the record in this case, we find the circuit court did not err in ruling upon the motion for summary judgment based upon the evidence submitted. The Appellant failed to present a Rule 56(f) request, either formally or informally as permitted by *Powderidge.* The Appellant failed to set forth a "plausible basis" for the belief that additional material facts existed or that any additional discovery would "suffice to engender an issue both genuine and material[,]" as required by *Powderidge.* 196 W.Va. at 695, 474 S.E.2d at 875, syl. pt. 1, in part.

The lower court evaluated this motion for summary judgment upon an adequately developed record, including the statements and affidavits of all witnesses to the shooting, as well as the depositions of Mr. Coffinbarger and Ms. Wilkins. The Appellant was furnished adequate time for discovery, and the record provided a sufficient basis for a decision on the issue of summary judgment.

III. The Summary Judgment Decision

A. The Standard for Summary Judgment Determination

Having concluded that the lower court properly found that no additional period of discovery was necessary prior to ruling on the summary judgment motion, we address the issue of whether the lower court properly granted summary judgment based upon its conclusion that the decedent's act constituted an intervening cause as a matter of law.

In syllabus point one of *Williams*, this Court explained the fundamental standard for granting summary judgment, as follows:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

194 W.Va. at 53, 459 S.E.2d at 330. In syllabus point two of *Williams*, this Court continued:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.*

### B. Intervening Cause

This Court explained the concept of intervening cause in syllabus point three of *Wehner v. Weinstein*, 191 W.Va. 149, 444 S.E.2d 27 (1994), as follows:

> " 'An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.' Syllabus Point 16, *Lester v. Rose*, 147 W.Va. 575, 130 S.E.2d 80 (1963) [modified on other grounds, *State ex rel. Sutton v. Spillers*, 181 W.Va. 376, 382 S.E.2d 570 (1989) ]." Syllabus Point 1, *Perry v. Melton*, 171 W.Va. 397, 299 S.E.2d 8 (1982).

In *Yourtee v. Hubbard*, 196 W.Va. 683, 474 S.E.2d 613 (1996), this Court again addressed the function of an intervening cause as severing the causal connection between the original improper action and the damages.[3] The *Yourtee* court noted that "[g]enerally, a willful, malicious, or criminal act breaks the chain of causation." *Id.* at 690, 474 S.E.2d at 620. In *Yourtee*, the trial court had granted a

> motion for judgment notwithstanding the verdict on the ground that the negligence of the thief in driving the stolen automobile in such a manner that caused the death of the plaintiff's decedent was an intervening efficient cause that interrupted the chain of causation between the defendant's act in allowing his keys to be conveniently available to facilitate the theft of the automobile and the death of the plaintiff's decedent.

*Id.* This Court evaluated the evidence presented at trial and concluded that the lower court had the authority to determine that the car theft and "subsequent acts ... were intervening efficient acts which were not foreseeable by the defendant; thereby breaking the chain of causation which originally began with the defendant's negligent act and relieving the defendant of any liability." 196 W.Va. at 691, 474 S.E.2d at 621.

In syllabus point thirteen of *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990), this Court emphasized the significant role of the concept of foreseeability in the determination of intervening cause, as follows: "A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct." *See also Hairston v. Alexander Tank and Equipment Co.*, 310 N.C. 227, 311 S.E.2d 559, 567 (1984) (finding that " '[t]he test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury' ") (quoting *Riddle v. Artis*, 243 N.C. 668, 91 S.E.2d 894, 896–97 (1956)).

3. *See Lennon v. Pieper*, 411 N.W.2d 225, 228 (Minn.Ct.App.1987) (holding that the intervening act "breaks the chain of causation set in operation by a defendant's negligence, thereby insulating his negligence as a direct cause of the injury").

Regarding the particular act of suicide as an unforeseeable, intervening cause, the Tennessee court explained in *White v. Lawrence*, 975 S.W.2d 525 (Tenn.1998), that "suicide may constitute an intervening cause if it is a willful, calculated, and deliberate act of one who has the power of choice." *Id.* at 530. The "crucial inquiry is whether the defendant's negligent conduct led to or made it reasonably foreseeable that the deceased would commit suicide. If so, the suicide is not an independent intervening cause breaking the chain of legal causation." *Id.* In *Wyke v. Polk County School Board*, 129 F.3d 560 (11th Cir.1997), the United States Court of Appeals for the Eleventh Circuit explained that "[a]s a general rule, absent some type of custodial relationship, one cannot be held liable for the suicide of another." *Id.* at 574. "The rule's underlying rationale is that suicide constitutes an independent, intervening cause, which is not ordinarily foreseeable." *Id.*

The intent of the decedent in pulling the trigger in the present case cannot be ascertained; thus, reference to the act as an intentional act of suicide is not necessarily accurate. If one assumes the absence of intent to kill, the fact remains that the decedent placed a loaded gun to his head and pulled the trigger, spun the cylinder, and pulled the trigger again. This Court discussed the game of Russian Roulette in *Koger v. Mutual of Omaha Insurance Co.*, 152 W.Va. 274, 163 S.E.2d 672 (1968), and quoted extensively from *Thompson v. Prudential Insurance Co.*, 84 Ga.App. 214, 66 S.E.2d 119 (1951), a Georgia Supreme Court case in which an insured was engaging in Russian Roulette.[4] The Georgia court noted that "[o]ne engaging in such a bizarre pass-time with a lethal weapon, if he be compos mentis, knows that he is courting death or severe injury, and will be held to have intended such obvious, and well known results, if he is killed or injured." *Id.* at 123.

## C. Determination as a Matter of Law

 This Court has consistently dealt with the determination of intervening cause within the framework of the proximate cause analysis and has relegated the task of resolution of these matters to the jury unless the facts and inferences to be drawn therefrom are clear as a matter of law. *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963). In syllabus point two of *Evans*, this Court explained: "The questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusion from them." *Id.* at 143, 133 S.E.2d at 711, syl. pt. 2.

In syllabus point six of *Cullip ex rel. Pitts v. Domann*, 266 Kan. 550, 972 P.2d 776 (1999), the court likewise clearly explained the distinction between issues of negligence to be decided by the jury and those to be determined as a matter of law: "Ordinarily, questions of negligence including proximate cause are questions of fact to be resolved by the trier of fact. However, where all the evidence relied upon by a party is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law." *Id.* at 779.

Similarly, in *George v. Breising*, 206 Kan. 221, 477 P.2d 983 (1970), a case involving the theft of a vehicle left with a private garage for repairs, the court concluded as a matter of law that although the act of leaving the keys in the ignition was negligent, the intervening act of negligence of the car thief was the direct and proximate cause of the injury sustained by the plaintiff. *Id.* at 988–89; *see also Rodriguez v. Pro Cable Serv. Co.*, 266 A.D.2d 894, 697 N.Y.S.2d 440, 441 (N.Y.App. Div. 4 1999) (concluding that the issue of legal cause may be determined as a matter of law where the facts lead to only one rational conclusion); *Stephenson ex rel. Coley v. S.C.*

---

4. One night prior to his death, the insured in *Thompson* had demonstrated his ability to place one bullet in the gun and spin the cylinder, making the bullet land on the bottom, and then pull the trigger without causing the bullet to discharge. 66 S.E.2d at 123. On the next evening, the insured's engagement in the game of Russian Roulette led to his self-inflicted death. *Id.*

*Johnson & Son, Inc.,* 168 Misc.2d 528, 638 N.Y.S.2d 889, 894 (N.Y.Sup.Ct.1996) (discussing breaking the chain of causation where intervening acts are extraordinary, not foreseeable, or independent).

The lower court discerned no conflicting evidence regarding the firing of the gun; nor did the lower court conclude that the facts were such that reasonable men could draw different conclusions therefrom. The individuals present at the time of the discharge of the gun all indicate in their statements, affidavits, and depositions that Mr. Cool pulled the trigger twice, firing the fatal shot on the second attempt. The witnesses further indicate that Mr. Cool fired the shots with no assistance or encouragement from other individuals. Mr. Cool made a conscious decision to remove the bullet from the gun, place it back into the cylinder, and fire the gun. When that first attempt did not produce a bullet, Mr. Cool spun the cylinder again and fired the gun a second time, killing himself.

■ The lower court consequently found that the decedent's act, whether characterized as intentional suicide or a tragic consequence of playing Russian Roulette, constitutes an intervening cause as a matter of law. Upon review of the record, briefs, and arguments of counsel, we agree with the lower court's conclusion that there was no genuine issue of material fact regarding the self-inflicted gunshot wound, that the decedent's act constituted an intervening cause, and that summary judgment was appropriate. We therefore affirm the decision of the lower court.

Affirmed.

Justice STARCHER dissents.