# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**REBECCA SWISHER,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-221**        (Cir. Ct. of Braxton Cnty. Case No. CC-04-2022-C-42)

**BRAXTON COUNTY MEMORIAL HOSPITAL, INC.,**
**Defendant Below, Respondent**

**FILED**
**December 22, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rebecca Swisher appeals the April 24, 2025, order from the Circuit Court of Braxton County, which granted Respondent Braxton County Memorial Hospital, Inc.'s (the "Hospital") motion for summary judgment and dismissed her wrongful termination case. The Hospital filed a response.[1] Ms. Swisher filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Swisher is a registered nurse who was employed by the Hospital from April 29, 2014, until her termination on April 28, 2022. During her employment, Ms. Swisher was an at-will employee and last worked as a nurse manager in the Hospital's medical surgical unit. It is undisputed that the Hospital is a private, non-profit, critical access hospital.

Ms. Swisher was terminated following an investigation that substantiated multiple complaints of misconduct against her, including that she used profane and abusive language towards staff and patients, and was verbally and physically intimidating during encounters with staff. It is undisputed that the Hospital previously disciplined Ms. Swisher for similar unprofessional behavior related to incidents, which occurred in May 2020, October 2020, and January 2022. These incidents resulted in Ms. Swisher receiving written warnings and verbal counseling. Notably, after Ms. Swisher's January 2022 incident, the Hospital issued a written corrective action, which advised Ms. Swisher that "further incidents of behavior perceived as inappropriate, unprofessional, disrespectful or otherwise may result in progressive disciplinary action up to and including termination."

---

[1] Ms. Swisher is represented by Ambria M. Britton, Esq., and Justin D. Jack, Esq. The Hospital is represented by Jacqueline L. Sikora, Esq., and Brian Peterson, Esq.

1

On February 5, 2022, while at work, Ms. Swisher was physically pushed by a Hospital visitor who was in the facility visiting their critically ill, dying parent. Ms. Swisher appropriately reported the incident to the Hospital on February 6, 2022. Ms. Swisher described the incident as an "assault," but indicated that she did not feel threatened and "related the [visitor's] behavior to the situation." Ms. Swisher's report did not allege that the visitor was attempting to harm any Hospital patient and did not express any concern for patient safety. No complaints were received regarding Ms. Swisher's conduct, and she received no discipline for her conduct related to the February 5, 2022, incident.

However, the Hospital did receive additional complaints against Ms. Swisher for her unprofessional conduct, occurring on April 5, 11, and 12, 2022 (collectively the "April incidents"). The allegations included her use of profane language, intimidating other members of the Hospital staff, and otherwise unprofessional behavior. On April 19, 2022, the Hospital suspended Ms. Swisher pending an investigation into the April incidents.

Following its investigation, the Hospital terminated Ms. Swisher by letter dated April 28, 2022, which indicated that the Hospital's investigation substantiated the April incidents and established that Ms. Swisher had engaged in "highly unprofessional behavior on numerous occasions over the past thirty (30) days, which involved your use of profane and abusive language toward staff and patients, as well as intimidating verbal and physical encounters with staff."

On December 12, 2022, Ms. Swisher initiated the instant litigation when she filed a two-count complaint against the Hospital. In Count I, Ms. Swisher asserted a common law claim pursuant to *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).[2] She alleged that her termination violated public policy because she was terminated in retaliation for reporting patient safety concerns to the Hospital, which is protected by the West Virginia Whistle-Blower Act, West Virginia Code §§ 6C-1-1 to -1-8. With respect to Count I, Ms. Swisher's complaint alleges:

---

[2] This case stands for the following proposition:

The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

*Harless*, at 116, 246 S.E.2d at 271, syl.

2

14. Based upon information and belief [Ms. Swisher] was wrongfully retaliated against and ultimately wrongfully terminated in retaliation for reporting concerns of patient safety due to the management of [the Hospital].

15. Even at will employees may recover for wrongful termination and retaliatory treatment ["]where the treatment was motivated by an intention to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge["]. *Harless v. First Nat'l Bank* [*in Fairmont*], [192] W. Va. 116, 246 S.E.2d 270 (1978).

16. There is a clearly established public policy in West Virginia regarding ensuring a level of quality when treating patients to not only protect the safety of the patients but the nurses as well.

17. Further, there is a clear established public policy by West Virginia Supreme Court that ["]it is the public policy of this state and otherwise unlawful to discriminate or retaliate against an employee for reporting acts of discrimination and/or harassment which are occurring in the workplace["]. *Burke v. Wetzel Cnty. Comm 'n,* 240 W. Va. 709, 728, 815 S.E.2d 520, 539 (2018).

18. There is a clear established public policy that provides that ["]no employer may discharge or harass an employee because the employee, acting on her own volition makes a good faith report to the employer or appropriate authority an instance of wrongdoing["]. West Virginia Code §6C-1-3(a) [2020]. As was done while reporting patient safety concerns.

In Count II, Ms. Swisher asserted a claim for wrongful termination without citing the statutory or common law authority upon which her cause of action is based. Rather, the complaint simply alleges that "[Ms.] Swisher's termination was based at least in part on her reports of concern for patient safety. Thus, [Ms. Swisher] was terminated wrongfully and in violation of West Virginia law"; further, "[Ms.] Swisher did not commit any separate dischargeable offense and any contrary allegation is merely a pretext."

The Hospital interpreted Count II as implicating the West Virginia Patient Safety Act, West Virginia Code §§ 16-39-1 to -8 (the "WVPSA"). On March 31, 2025, the Hospital filed its motion for summary judgment. The motion made two basic contentions: first, Ms. Swisher could not establish her retaliation claim because she failed to establish a substantial public policy; and second, Ms. Swisher could not maintain her wrongful termination claim under the West Virginia Patient Safety Act because her termination was not the result of patient advocacy, but rather, the Hospital had a legitimate and non-

3

retaliatory basis to terminate Ms. Swisher's employment, and that basis was not a pretext for retaliation.

In response, Ms. Swisher filed a motion on April 8, 2025, asking the circuit court to take judicial notice of the WVPSA, and to find that it represents a substantial public policy under *Harless*. The Hospital responded in opposition to the motion on April 11, 2025, arguing that Ms. Swisher was attempting to use judicial notice to retroactively amend her complaint and assert a WVPSA claim for the first time. On April 14, 2025, Ms. Swisher filed her response in opposition to summary judgment wherein she claimed for the first time that her claims were brought under the WVPSA, and averred that it was an established public policy under *Harless*. To support her position, Ms. Swisher claimed that she was terminated in retaliation for submitting her February 6, 2022, incident report, and that the WVPSA shielded her from termination because her report was a good faith report of *wrongdoing* under the statute. *See* W. Va. Code § 16-39-4 (2001).[3] According to Ms. Swisher, she reported that the Hospital: did not adequately train its staff to protect health care workers from assailants on the premises; had improper visitation policies; and permitted a visitor on the premises that was a risk to others (claiming that when she was assaulted on February 5, 2022, she was attempting to limit the number of visitors in the area in response to the COVID-19 pandemic).

The circuit court held a pre-trial hearing on April 15, 2025, at which time the parties agreed that Ms. Swisher could not maintain her claims based upon the state's whistle-blower law because, as a private entity, the Hospital does not meet the definition of a "public" employer as defined by West Virginia Code § 6C-1-2 (1988). Ms. Swisher

---

[3] This portion of the WVPSA provides as follows:

(a) No person may retaliate or discriminate in any manner against any health care worker because the worker, or any person acting on behalf of the worker:
(1) Makes a good faith report, or is about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste.
(2) Advocated on behalf of a patient or patients with respect to the care, services or conditions of a health care entity;
(3) Initiated, cooperated or otherwise participated in any investigation or proceeding of any governmental entity relating to the care, services or conditions of a health care entity.
(b) A health care worker with respect to the conduct described is acting in good faith if the health care worker reasonably believes:
(1) That the information is true; and
(2) Constitutes waste or wrongdoing as defined in section three of this article.

conceded that Count II was also a *Harless* claim, and indicated she was relying upon the WVPSA to support both counts of her complaint. The court heard the parties' arguments regarding summary judgment and at the conclusion of the hearing, the court took the matter under advisement.

On April 24, 2025, the circuit court entered the order presently on appeal. The primary issue before the court was whether under the facts of this case, the WVPSA was a substantial public policy, which insulated Ms. Swisher's claims from the Hospital's motion for summary judgment.[4] On this issue, the circuit court found that under the WVPSA, *wrongdoing* is narrowly defined as "a violation of any law, rule, regulation, or generally recognized professional or clinical standard that relates to care, services, or conditions and which potentially endangers one or more patients or workers or the public." W. Va. Code § 16-39-3 (2022). The court found it telling that the statute setting forth the WVPSA's legislative findings and purpose was repealed by the Legislature prior to Ms. Swisher's termination. *See* W. Va. Code § 16-39-2, *repealed by*, Acts 2021, c. 220, eff. April 10, 2021. The court also found it significant that during the same legislative session, West Virginia Code § 16-39-8 (2021) was adopted to address patient visitation in health care facilities during a declared public health state of emergency for a contagious disease. Particularly, the circuit court cited partial language from subsection (a) of the statute, which provides "[i]f the patient's death is imminent, the health care facility shall allow visitation upon request at any time and frequency." W. Va. Code § 16-39-8(a).

Next, the circuit court found that the Supreme Court of Appeals of West Virginia ("SCAWV") has held: "A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." Syl. Pt. 2, *Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 559 S.E.2d 713 (2001) (quoting Syl. Pt. 1., *Cordle v. General Hugh Mercer Corp.,* 174 W. Va. 321, 325 S.E.2d 111 (1984)). The court also found that "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, [courts] look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, *Birthisel v. Tri-Cities Health Servs.*, 188 W. Va. 371, 424 S.E.2d 606 (1992). It also recognized that "courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject. . . . Nevertheless, despite the broad power vested in the courts to determine public policy, we must exercise restraint when we use it." *Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W. Va. 135, 141, 506 S.E.2d 578, 584 (1998) (citations omitted).

As further guidance, the circuit court cited language from in *Feliciano*, in which the

---

[4] The circuit court's order also noted Ms. Swisher's acknowledgement that she could not rely upon our state's whistle-blower law to support her claims and included limited findings regarding its inapplicability to the present case. Given Ms. Swisher's concession below, we do not need to include a summary of those findings in this appeal.

SCAWV stated:

> [W]e find the following elements . . . to be particularly instructive to a determination of whether an employee has successfully presented a claim of relief for wrongful discharge in contravention of substantial public policy:
>
> 1. Whether a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. Whether dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. Whether the plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. Whether the employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Feliciano*, at 750, 559 S.E.2d at 723 (citation modified).

Applying these principles, the circuit court made two key determinations. First, the court concluded that Ms. Swisher's reference to "patient safety" in her complaint did not meet the standard for identifying a public policy. *See Frohnapfel v. ArcelorMittal USA LLC*, 235 W. Va. 165, 170-71, 772 S.E.2d 350, 355-56 (2015) (quotations and citations omitted) (stating that *Harless* claims require "more than simply raising the spectrum of a potentially governing law. The mere citation of a statutory provision is not sufficient to state a cause of action for retaliatory discharge without a showing that the discharge violated the public policy that the cited provision clearly mandates.").

Second, the court found that the WVPSA cannot satisfy the *clarity* or *jeopardy* elements of *Feliciano*, and as a result, the statutory scheme does not establish public policy under West Virginia law. With respect to the *clarity* element, the court found Ms. Swisher's reliance on *Camden-Clark Memorial Hospital Corp. v. Tuan Nguyen*, 240 W. Va. 76, 807 S.E.2d 747 (2017) to be misplaced. Specifically, the court recognized that while *Camden-Clark* and the present case each involve allegations of retaliation by a former employer-hospital for reporting patient safety concerns under West Virginia Code § 16-39-4, they are distinguishable for the purposes of a *Feliciano* analysis because *Camden-Clark*'s public policy argument was predicated upon the legislative purpose of the WVPSA under West Virginia Code § 16-39-2, which no longer exists. Likewise, the court found Ms. Swisher's contention that the February 5, 2022, incident was related to her patient safety concerns

regarding the COVID-19 pandemic was undermined by the Legislature's adoption of West Virginia § 16-39-8. Moreover, the court determined that Ms. Swisher did not offer any form of authority listed by West Virginia Code § 16-39-3 to establish that her good faith complaint of physical assault by a Hospital visitor was a complaint of *wrongdoing* within the meaning of the WVPSA. Thus, the circuit court concluded that the *clarity* element could not be met because there is no clear public policy within the WVPSA that prohibits at-will employees from being discharged for complaining that they were assaulted by a third party, and further, the SCAWV has held on numerous occasions that criminal statutes may not be used as the basis for *Harless* claims. *See, e.g., Swears v. R.M. Roach & Sons, Inc.*, 225 W. Va. 699, 696 S.E.2d 1 (2010); *Blanda v. Martin & Seibert, L.C.*, 242 W. Va. 552, 836 S.E.2d 519 (2019); *Jarrell v. Frontier W. Va., Inc.*, 249 W. Va. 335, 895 S.E.2d 190 (2023).

The circuit court relied upon similar reasoning regarding the *jeopardy* element. Here, the court reiterated that Ms. Swisher failed to establish a wrongdoing as defined by the WVPSA. On this point, the court observed that Ms. Swisher's incident report did not expressly allege any wrongdoing as defined by statute, but rather, her complaint stated that she was pushed by a Hospital visitor who was attempting to visit their dying parent. The court found that there was nothing in the record to support Ms. Swisher's position or to overcome the countervailing language of West Virginia Code § 16-39-8, and that the court was unwilling to stretch the WVPSA to encompass her claims. As such, the court concluded that Ms. Swisher's termination would not otherwise jeopardize the protections afforded other health care workers who reported recognized acts of wrongdoing under the WVPSA.

Thereafter, the court granted the Hospital summary judgment and dismissed the case with prejudice. This appeal followed.

In West Virginia, it is well established that our standard of review in this matter is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

7

On appeal, Ms. Swisher raises three assignments of error to challenge the circuit court's summary judgment order. Upon review, we find it appropriate to consolidate and restate those arguments for the purposes of this appeal. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal). Restated, Ms. Swisher contends that the circuit court erred in finding that she could not rely upon the WVPSA as the substantial public policy to support her *Harless* claim. Ms. Swisher also contends that the court's entry of summary judgment deprived her of her right to a jury trial.

Ms. Swisher contends that the circuit court erred by finding that the WVPSA was not a substantial public policy for two reasons: first, she asserts that her complaint properly pleaded a *Harless* cause of action; and second, the circuit court failed to properly construe the meaning of the term *wrongdoing* under the statute, and as a result, mistakenly concluded that the *clarity* and *jeopardy* elements were not met under *Feliciano*. For the reasons set forth below, we are not persuaded by Ms. Swisher's arguments.

According to Ms. Swisher, her complaint's recurrent reference to the term "patient safety" was sufficient to establish her reliance upon the WVPSA; thus, the circuit court erred when it found that her complaint did not sufficiently plead a public policy. However, as we have previously established, Ms. Swisher's complaint only references patient safety in passing, without any citation to supporting authority. Case law clearly states that such generalized statements do not raise *Harless* claims. *See Frohnapfel*, at 170-71, 772 S.E.2d at 355-56. Similarly, on appeal, Ms. Swisher's argument on this issue is addressed summarily, without citation to supporting authority. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996). Further, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal" and that "[t]he Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal." The SCAWV has further noted that "[a] skeletal argument, really nothing more than an assertion, does not preserve a claim[.]" *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011). As such, we conclude that Ms. Swisher is not entitled to relief on this issue.

In a parallel argument, she also contends that because the SCAWV has previously found that the WVPSA may be used to support *Harless* claims, the Legislature's repeal of West Virginia Code § 16-39-2 does not subvert the WVPSA's status as a substantial public policy. We are not persuaded by this argument. While Ms. Swisher cites the SCAWV's decision in *Camden-Clark*, which concluded that the WVPSA could support a *Harless* claim, all those decisions relied upon the legislative purpose of the WVPSA under West Virginia Code § 16-39-2 to reach those determinations. The circuit court determined that cases like *Camden-Clark* could no longer be used to establish the WVPSA as a public policy under *Harless* because those cases all antedated the repeal of the statute in 2021. "The general rule is, that when an act of the Legislature is repealed without a saving clause, that it must be considered, except as to transactions passed and closed, as if it had never existed." Syl. Pt. 2, *Jefferson Cnty Citizens for Econ. Pres. v. Cnty. Comm'n of Jefferson Cnty.*, 224 W. Va. 365, 686 S.E.2d 16 (2009) (quoting *Chesapeake and Potomac Co. v. State Tax Dep't*, 161 W. Va. 77, 83, 239 S.E.2d 918, 922 (1977) (internal quotations and citations omitted)). In this case, the WVPSA contains no savings clause and, thus, as the circuit court aptly observed, Ms. Swisher could not establish the WVPSA as a public policy through earlier SCAWV decisions, which were issued prior to the WVPSA's 2021 amendments.

Next, Ms. Swisher maintains that the circuit court's *Feliciano* analysis was flawed due to its narrow construction of the term *wrongdoing*. At its crux, Ms. Swisher's contention is that the assault of a health care worker by a third party qualifies as a wrongdoing under the statute. In support, she reiterates her arguments regarding her references to patient safety in her complaint and prior SCAWV decisions regarding the WVPSA. She also restates her argument from summary judgment that her incident report meets the statutory definition of wrongdoing because it reported issues related to such things as Hospital policies, training, and staff protection. Notably, however, Ms. Swisher's argument contains no citation to the record, let alone specific language from the incident report to support her claims. *See* W. Va. R. App. P. 10(c)(7). Rather, Ms. Swisher's argument is that these wrongdoings should be inferred from the nature of the incident report, or alternatively, her subjective interpretation of the facts should subvert the circuit court's findings on this issue. However, at no point during the entirety of this case has Ms. Swisher ever contended that there was ambiguity in the statutory definition of *wrongdoing* under West Virginia Code § 16-39-3. Further, in support of this argument on appeal, Ms. Swisher merely offers generalized statements and hypotheticals to suggest that the circuit court misconstrued the term and that the *Feliciano* factors are easily met. This is not sufficient to establish error or overcome her burden at summary judgment.[5]

---

[5] Although Ms. Swisher raised a common law *Harless* claim and relied on the WVPSA as the relevant public policy, her failure to produce evidence that her February 6, 2022, report was a good faith report of "wrongdoing" as defined in West Virginia Code § 16-39-3 would also have been fatal to a statutory WVPSA retaliation claim filed under West Virginia Code § 16-39-6(a).

In its order, the circuit court set forth factual findings, established precedent, and cited statutory authority applicable to the legal issue presented at summary judgment. After reconciling the matter, the court determined that the Hospital's motion was properly supported by affirmative evidence establishing that there was no genuine issue of material fact. Subsequently, the burden shifted to Ms. Swisher to oppose summary judgment through more than a *mere scintilla of evidence*. To meet this burden, the SCAWV has stated:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)[6] of the West Virginia Rules of Civil Procedure.

*Williams*, 194 W. Va. at 52, 459 S.E.2d at 329, syl. pt. 3. The nonmoving party must also present *evidence* that contradicts the showing of the moving party by pointing to specific facts demonstrating that there is a trial-worthy issue which is not only a genuine issue but also an issue that involves a material fact. *Id.* at 60, 459 S.E.2d at 337 (emphasis added). Moreover, the nonmoving party cannot create a genuine issue of material fact through mere speculation or building of one inference upon another. *Id.* at 61 n.14, 459 S.E.2d at 338 n.14.

Thus, to resist the Hospital's motion, Ms. Swisher was required to either rehabilitate the evidence, produce additional evidence showing a genuine issue of material fact, or file an affidavit for further discovery. However, Ms. Swisher failed to do so. Specifically, there is no affidavit in the record from Ms. Swisher seeking further discovery, and her response in opposition to summary judgment neither rehabilitates the evidence, nor produces additional evidence to sufficiently establish a genuine issue of material fact.

Rather, in opposition to summary judgment, Ms. Swisher simply offers the overarching contention that her reporting the acts of a third party is protected by established public policy under the WVPSA. *See Williams*, 194 W. Va. at 61, 459 S.E.2d at 338 (citations omitted) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 62, 543 S.E.2d 338, 343 (2000) ("[T]he party opposing the summary judgment motion 'must do more than simply show that there is some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574

---

[6] We note that under the 2025 amendments to the West Virginia Rules of Civil Procedure, the former Rule 56(f) has been renumbered as Rule 56(d).

(1986).”); *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 700, 474 S.E.2d 872, 880 (1996) (“Rule 56 does not impose upon the circuit court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Nor is it our duty to do so on appeal.”). Here, there is no indication from the four corners of the court's order that the circuit court did not afford West Virginia Code § 16-39-3, or any other provision of the WVPSA its plain and ordinary meaning when it determined that there was no genuine issue of material fact in this case. *See* Syl. Pt. 3, *Nicewarner v. City of Morgantown*, 249 W. Va. 120, 894 S.E.2d 902 (2023) (citation omitted) (“When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute.”); Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) (“Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.”). Further, as explained above, Ms. Swisher's differing application of the law to the facts of this case is not sufficient to withstand the Hospital's motion for summary judgment. Therefore, we cannot conclude that the circuit court erred in its determination that summary judgment was appropriate in this case.

Lastly, Ms. Swisher asserts that the circuit court deprived her of her right to a jury trial by improperly substituting its judgment regarding the facts of the case for that of the jury by granting summary judgment on her claims. We disagree. As the SCAWV has held:

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe upon the constitutional right of a party to a trial by jury; it is not a substitute for a trial, or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.

Syl. Pt. 7, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963) (citations omitted). While Ms. Swisher's complaint made a demand for a jury trial, she was not deprived of her constitutional rights by the court's April 24, 2025, order. Here, having already determined that the circuit court did not err in determining, as a matter of law, that there is no issue of fact to be tried for Ms. Swisher's claims, the circuit court did not deprive Ms. Swisher of her right to a jury trial. As such, we affirm the circuit court's entry of summary judgment.

Accordingly, we affirm the circuit court's April 24, 2025, order.

Affirmed.

11

**ISSUED:** December 22, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White