No. 45,840

NORMAN W. GEORGE, a Minor, *Appellant*, v. JOHN E. BREISING, d/b/a K. B. S. MOTOR COMPANY, *Appellee.*

(477 P. 2d 983)

Opinion filed December 12, 1970.

*James P. Johnston,* of Sowers, Sowers, Carson and Johnston, of Wichita, argued the cause and was on the brief for the appellant.

*H. W. Fanning,* of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause, and *John H. Gerety,* of Foulston, Hook and Gerety, of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a damage action arising from personal injuries sustained by the plaintiff, a pedestrian, in an autobile accident in Wichita, wherein the plaintiff was struck and injured by a stolen automobile driven by one Stephen Williams.

The defendant was the owner and operator of a private automobile garage repair business and was charged with negligence by the plaintiff for leaving the keys in the automobile while it was parked on the private grounds of the defendant's place of business. After discovery had been completed the trial court, upon a stipulation of the material facts at the pretrial conference, sustained the defendant's motion for summary judgment.

The underlying questions are: (1) Whether it is negligence to leave an automobile on private property, unattended and unlocked

with the keys in the ignition, and if so; (2) whether that negligence is a proximate cause of the injury sustained by the plaintiff herein.

John E. Breising (defendant-appellee) operates his automobile garage repair business under the name of K. B. S. Motor Company at its present location of 2648 North Arkansas Avenue, Wichita, Kansas. Prior to operating the garage at its present location, he was in the same business at 2745 North Broadway, Wichita, Kansas.

The zoning classification for Breising's property is commercial. Located to the north of the premises in question is the Ramsey Dairy; to the east is a vacant lot; to the south is the residence of Loretta Seavey; and to the west across the street is the Ramsey-Kester used car lot.

While the appellant herein attempts to depict Mr. Breising's place of business as located in the middle of a slum area filled with criminals and juvenile delinquents, the area and neighborhood surrounding the business premises in question is shown by photographs in the record to represent a fairly normal location for business activity.

On the 9th day of November, 1967, Harold Roberts brought his 1963 Oldsmobile to Breising for repair. The repairs were completed on the 13th day of November, 1967, and pursuant to the request of Roberts, Breising parked the car on his premises just outside the building. On the afternoon of the day in question Roberts had called at Breising's shop and asked whether the repairs to his automobile had been completed. Breising told Roberts that if the repairs were completed during the afternoon of November 13, 1967, he would park the car in front of the shop so that Roberts could pick it up. Roberts informed Breising he would come by about 6:30 that evening, and if the car was not out on the lot he would assume Breising had not completed the repairs. There was nothing said about leaving the keys in the ignition when the conversation took place. At approximately 6:00 p. m. Mr. and Mrs. Roberts drove by and saw their automobile in the garage with the hood up. Mr. Roberts assumed the repairs had not been completed inasmuch as there was an agreement to park it outside only if the repairs had been completed. At about 6:45 p. m. Breising parked Roberts' 1963 automobile on the parking lot outside of the building with the keys in the ignition. Breising then closed the shop and went home for dinner. When he returned to the shop at about 8:00 p. m. for some evening work, he noticed the automobile was gone and assumed Mr. Roberts had picked it up.

Sometime between 6:45 and 8:00 p. m. on the evening in question the Roberts car had been stolen from its location on Breising's premises by two boys, Roger Wyant (age 15) and Paul Allen (age 14). These boys drove the car around Wichita until approximately 7:30 that evening. They then parked it in front of the KWBB radio station located at 28th and Salina Streets and started home. On the way home they met Stephen Williams in the Safeway parking lot at 25th and Arkansas Avenue and told him about the automobile.

The three boys went back to the automobile and Stephen Williams drove it around for awhile. Later Stephen Williams was returning the automobile to Breising's place of business, but upon noticing him in the garage working, drove on to 25th and Shelton where all three boys left the automobile and went to their respective homes.

The next morning, November 14, 1967, Stephen Williams returned alone to the automobile and drove it again. He picked up a friend, Dennis Stout, and while driving the automobile around Wichita he struck the plaintiff near 13th and Santa Fe Streets.

The appellant stresses facts in the stipulation disclosing that teenage or younger children frequented the general area and Breising occasionally saw them walking down the alley behind his garage, walking down the sidewalk in front or cutting across his property. He stresses thefts reported of automobiles from the Ramsey-Kester used car lot on June 16, 1967, August 25, 1967, and September 30, 1967. He also stresses that police records reflect break-ins at the Ramsey Dairy on June 15, 1967, and December 14, 1967. He relies on the fact that Breising had knowledge of these car thefts and break-ins. He also relies on the fact that on Memorial Day, May 30, 1967, a 1961 Rambler sedan was stolen from Breising's lot. This automobile and its keys had been delivered by the owner, Sutherland, to a Mr. Ramsey who in turn delivered the automobile and keys to Breising. Apparently the vehicle was left on the K. B. S. lot with the keys in the ignition.

Loretta Seavey, who lived near the premises, testified by deposition the neighborhood was not too good and had deteriorated in recent years because a lot of minority group people had moved in the area. She had observed boys getting in and out of cars on the used car lot, and read of boys getting into trouble, many of them having addresses around the neighborhood.

The appellant concedes the instant case is one of first impression in Kansas.

Counsel for the appellant quotes the following words from Dean Robert W. Miller of the Syracuse University Law School contained in an article entitled "Tort Law in Evolution," appearing in the April/May, 1969, issue of *Trial* magazine, reading:

"Tort law is not static, nor should it be. It must be a growing thing in order to serve society well.

"Changes in tort law are produced by statute and by court decision. Legislative change is not uncommon, but the changes brought about by court decisions are perhaps more typical of the dynamic nature of tort law: . . ." (p. 29.)

He then argues the foregoing quotation establishes the frame of reference within which the facts of the instant case and the duties and responsibilities arising therefrom must be considered. He relies upon general rules in tort law heretofore discussed by this court with considerable detail in *Steele v. Rapp*, 183 Kan. 371, 327 P. 2d 1053. Further discussion herein will proceed on the assumption the reader is familiar with the case.

The rule with which we are here concerned is stated in *Steele v. Rapp*, supra, as follows:

"The rule that the causal connection between the actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. (*Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590; and *Emmerich v. Kansas City Public Service Co.*, 177 Kan. 443, 280 P. 2d 615.)" (Syl. ¶ 3.)

Turning to the courts from other jurisdictions which have passed upon the question here presented, the majority of the courts hold there is no liability as a matter of law. (See annotation, 91 A. L. R. 2d 1326.) Various reasons have been stated by the courts as supporting this conclusion. (See Prosser on Torts [3rd Ed.] Ch. 9, § 51, pp. 282, 323.)

The only statute in Kansas which pertains to unattended vehicles is K. S. A. 1970 Supp. 8-573a. This statute has no application here because it does not relate to unattended vehicles on private property, and furthermore it was not enacted until 1968, after the accident in question. This statute, similar to those enacted in other states, prohibits a person from leaving the keys in the ignition in an unattended automobile on a public thoroughfare.

The appellant did not argue in the trial court, nor does he raise

the point on appeal, that the foregoing statute or any other statute has application to the instant case.

It is well established that before one can be held responsible for his negligent act the actor's negligence must be the proximate cause of the injury sustained. This leads to the fundamental law in negligence cases which was so aptly stated in words of Justice Cardozo speaking for the court in the landmark case of *Palsgraf v. Long Island R. R. Co.* (1928) 248 N. Y. 339, 162 N. E. 99, where it was said:

". . . 'Proof of negligence in the air, so to speak, will not do' . . .

. . . . . . . . . . . . . . . .

". . . The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. . . ." (pp. 341, 344.)

The duty arising out of the relation between individuals, which imposes upon one person a legal obligation for the benefit of another, was discussed in some detail, together with the *Palsgraf* case, in *Steele v. Rapp,* supra.

Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. In every instance before an act is said to be negligent, there must exist a duty to the individual complaining, and the observance of which would have averted or avoided the injury. The plaintiff who sues his fellowman sues for a breach of duty owing to himself. The victim does not sue derivatively, or by right of subrogation, to vindicate an interest invaded in the person of another. (*Elliott v. Chicago, Rock Island & Pac. Rld. Co.,* 203 Kan. 273, 283, 454 P. 2d 124.)

Breising may have owed a duty to Roberts, who owned the automobile in question, not to leave his automobile on the premises unattended, unlocked, with the keys in the ignition. But Breising's conduct was not a wrong and did not result in a breach of duty owing to the appellant merely because it may have been a breach of duty owing to Roberts.

This principle was made abundantly clear in *Shafer v. Monte Mansfield Motors* (1962) 91 Ariz. 331, 372 P. 2d 333. There the defendant left the ignition key in an automobile which was located in the rear of an unfenced lot along an alleyway containing several automobiles. A thief drove the car away and negligently collided with another automobile occupied by the plaintiff. The trial court granted judgment notwithstanding the verdict, and the plaintiff

appealed contending it was for the jury to decide whether it was negligence for the owner of a vehicle to leave the keys in the ignition under these circumstances. In affirming the trial court it was said on appeal:

"We have previously set out three elements as necessary for a case of actionable negligence; (1) there must exist a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) the defendant must fail to perform that duty; and (3) an injury to the plaintiff must proximately result from such failure. If no reasonable man could find that under the circumstances all three elements are present, then a directed verdict or judgment n. o. v. is proper. . . .

. . . . . . . . . . . . .

"The element with which we are here concerned is the scope of the duty owed by defendant. . . .

"'. . . before liability may be imposed for an act, the prevision of a reasonable person must be able to recognize danger of harm to the plaintiff or one in plaintiff's situation. The risk which must be anticipated to convert an act into a wrong is a risk of harm not to anyone but to plaintiff or "to another or others within the range of apprehension." '

. . . . . . . . . . . . .

"In view of the great weight of authority in other jurisdictions holding that as a matter of law the duty of one who leaves his keys in an unattended vehicle does not extend to a plaintiff injured in an accident with the converter of the car, and in the absence of further evidence that in this case the duty should be so extended, we hold that the trial court did not err in granting its judgment notwithstanding the verdict." (pp. 333, 334.)

Another illustration appears in *McKinney v. Chambers* (Tex. Civ. App. 1961) 347 S. W. 2d 30. There the defendant left a vehicle unattended and unlocked with the ignition key in the switch in a parking lot at a time when such lot was not open for business. A thief stole the vehicle and negligently collided with a car driven by the plaintiff. The trial court granted summary judgment for the defendant, and in affirming, the appellate court observed:

"'Negligence is a failure to observe a legal duty. Moreover, to constitute negligence at all, there must be a violation of a duty owed to the very person claiming on the ground of negligence. . . .'

". . . in order for a defendant to be held to have been negligent, the injury to the plaintiff must have been foreseeable. . . .

". . . It can not be held that the appellee [defendant] could reasonably foresee that a thief would steal his car, negligently drive it, and injure a third party, and for such purpose hold the appellee liable." (pp. 31, 32.)

Under the foregoing authorities, which we find to be persuasive, the act of Breising in leaving Roberts' automobile on his property unattended, unlocked, and with the keys in the ignition, did not consti-

tute a violation of any duty owed by Breising to the appellant as a matter of law. The fact the appellant was injured as a result of the negligent driving by a thief or his successor was not a reasonably foreseeable consequence of Breising's conduct. Breising's duty simply did not extend to the appellant. Breising left Roberts' automobile parked just outside the building on his premises at 6:45 p. m. on November 13, 1967, so that Roberts could pick it up when he went home for dinner. Upon Breising's return to work at 8:00 p. m., one hour and fifteen minutes later, the automobile had been stolen by Wyant and Allen, contrary to Breising's assumption that the owner had picked it up. Here the accident in question giving rise to the present controversy did not occur until the next day when it was driven by a successor in possession to the thieves.

Assuming it was negligent for Breising to leave the keys in Roberts' car on his property unlocked and unattended, the issue is not whether it was foreseeable that Robert's vehicle would be stolen as the appellant urges in his brief; rather, the inquiry is whether the independent intervening act of negligence committed by Williams, the successor in possession to the thieves, in driving the stolen vehicle was reasonably foreseeable. Under the weight of authority such an independent intervening act of negligence is not foreseeable as a matter of law, thereby rendering Breising's act of negligence to be a remote cause and the intervening act of negligence of Williams to be the direct and proximate cause of the injury sustained by the appellant.

Whether the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the intervening negligent act of another is determined by the test of foreseeability. If the original actor should have reasonably foreseen and anticipated the intervening act causing injury in the light of the attendant circumstances, his act of negligence would be a proximate cause of the injury. Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct and proximate cause and the former only the indirect or remote cause.

In *Stone v. Bethea* (1968) 251 S. C. 157, 161 S. E. 2d 171, the defendant left his automobile at his place of business in an area

designated for parking unlocked with the keys in the ignition. Shortly thereafter the car was stolen, and as a result of negligent driving by the thief, a collision occurred injuring the plaintiff. A directed verdict for the defendant was affirmed on appeal, the court stating:

"It is our conclusion that under the evidence in this case that the intervening independent act of negligence and willfulness on the part of the thief who stole the respondent's [defendant's] automobile was the sole, proximate and efficient cause of the injury to the appellant [plaintiff] and such could not have been foreseen by the respondent under the attendant circumstances and was not a proximate cause resulting from any act of negligence on the part of the respondent." (p. 164.)

On a similar set of facts the Supreme Court of Minnesota in *Kalberg v. Anderson Bros. Motor Co.* (1958) 251 Minn. 458, 88 N. W. 2d 197, said:

". . . the theft might reasonably have been foreseen, nevertheless, the original actor should not be held liable for the tortious act of a thief while the car was being driven by such thief or his successor in possession. . . ." (pp. 459, 460.)

Other decisions of like import are: *Curtis v. Jacobson* (1947) 142 Me. 351, 54 Atl. 2d 520; *Clements v. Tashjoin* (1961) 92 R. I. 308, 168 Atl. 2d 472; *McAllister v. Driever* (4th Cir. 1963) 318 F. 2d 513; and *Frank v. Ralston* (W. D. Ky. 1956) 145 F. Supp. 294, affirmed in 248 F. 2d 541 (6th Cir. 1957).

Our court has heretofore held the failure to anticipate a criminal act is not negligence. (*Hendren v. Ken-Mar Airpark*, 191 Kan. 550, 564, 382 P. 2d 288.)

Cases upon which the appellant has relied in his brief, and which we have rejected on the facts here presented are: *Anderson, Aplnt. v. Bushong Pontiac Co.*, 404 Pa. 382, 171 Atl. 2d 771; *Murray v. Wright*, 166 C. A. 2d 589, 333 P. 2d 111; *Hergenrether v. East*, 61 C. 2d 440, 39 Cal. Rptr. 4, 393 P. 2d 164; *Canavin v. Wilmington Trans. Co., Aplnt.*, 208 Pa. Super. 506, 223 Atl. 2d 902; *Mezyk v. National Repossessions*, 241 Or. 333, 405 P. 2d 840; *Gaither v. Myers* (D. S. Cir. 1968) 404 F. 2d 216; and *Justus v. Wood*, 209 Tenn. 55, 349 S. W. 2d 793, 348 S. W. 2d 332.

For the reasons heretofore stated the judgment of the lower court is affirmed.