(109 P.3d 1265)
No. 92,231

ROBERT G. LAMB, *Appellant,* v. STATE OF KANSAS and DAVID M. ALBERS, *Appellees.*

Opinion filed April 15, 2005.

*Dan E. Turner* and *Phillip L. Turner*, of Topeka, for appellant.

*Harry Kennedy*, assistant attorney general, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., MALONE and GREENE, JJ.

HILL, J.: The District Court dismissed Deputy Sheriff Robert G. Lamb's lawsuit against Kansas Highway Patrol Trooper David M. Albers and the State of Kansas on the grounds that Albers owed no special duty to Lamb and the Kansas Tort Claims Act made the defendants immune from this action. Lamb contends in this appeal the unattended motor vehicle statute, K.S.A. 8-1573, created a duty that Albers was not to leave his patrol car running with the keys in the ignition and the doors unlocked. Because there was no special duty owed by the trooper to the Deputy Sheriff when Albers was attempting to subdue a struggling suspect, we hold the court correctly dismissed the action. Furthermore, since there was no duty, K.S.A. 2001 Supp. 75-6104(i) affords immunity to Albers and the State because the claim is "barred by any other law."

### Background

On October 26, 2001, law enforcement agencies in Colorado, Sherman County, Kansas, and the state of Kansas were alerted that a suspect who had stolen unlocked vehicles was driving eastbound

on Interstate 70 from Colorado into Kansas. Robert G. Lamb, Sherman County Deputy Sheriff, along with other officers from the Sherman County Sheriff's Department, the Goodland Police Department, and the Kansas Highway Patrol (KHP) were involved in intercepting the suspect's vehicle. The suspect's vehicle became inoperative on the shoulder of I-70 after its tires were punctured. He fled from the car.

The fleeing suspect tried to enter an occupied, parked, and locked civilian vehicle. KHP Trooper David M. Albers drove his patrol car next to where the suspect was standing. Albers was the first officer to exit his vehicle in an attempt to apprehend the suspect. Albers jumped from his car, leaving the driver-side door open and the motor running. Albers and the suspect proceeded to struggle. The suspect ran around and entered Albers' patrol car in an attempt to flee. Albers also jumped into the patrol car.

Lamb and other officers approached the vehicle to assist Albers and stop the suspect. The patrol car somehow was placed into drive, causing it to lurch forward. The open driver-side door struck Lamb; he tumbled forward and was injured. Ultimately, officers were forced by the suspect's resistance to use lethal force.

Two years later, Lamb filed a petition claiming that Albers and the State of Kansas were negligent. Lamb asserted that the State's negligent supervision and training of Albers was the cause of Lamb's injuries. Lamb also set forth facts establishing that Albers was acting in the scope of his employment as a State employee when engaged in the negligent conduct. Finally, Lamb claimed that Albers negligently operated his vehicle by (1) failing to yield the right-of-way to Lamb; (2) failing to stop for Lamb; (3) failing to swerve his vehicle to avoid striking Lamb; (4) "driving too fast for the conditions then and there existing"; (5) failing to secure his vehicle when leaving it standing; (6) failing to close the door; (7) failing to turn the vehicle off and remove the keys; (8) allowing the vehicle to be unsecured and accessible "to being invaded by third parties"; (9) allowing unauthorized third parties access to the vehicle; (10) "failing to keep a proper lookout"; (11) failing to operate the vehicle in a safe manner; and (12) "engaging in a fight with the third party while the vehicle was moving."

The defendants filed a joint motion to dismiss based on K.S.A. 60-212(b)(6). The district court dismissed Lamb's petition in March 2004 after finding that Albers did not owe Lamb a duty of care and that the Kansas Tort Claims Act (KTCA) provided the defendants with immunity.

This court reviews a district court's order granting a motion to dismiss for failure to state a claim by deciding whether the petition states any claim for relief on the theory that was alleged by the plaintiff or any other possible theory. We accept as true the plaintiff's description of the events, along with any inferences that can be reasonably drawn from that description. The facts are viewed in the light most favorable to the plaintiff, and every doubt is resolved in the plaintiff's favor. But, this does not mean conclusory allegations on the legal effects of the events set out by the plaintiff must be accepted by the court if these allegations do not reasonably follow from the description of the events or if the described events contradict these allegations. Dismissal is proper only when the allegations in the petition clearly show the plaintiff does not have a claim. *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 881-82, 47 P.3d 383 (2002).

*Duty*

A negligence claim requires the existence of a duty from a defendant to a plaintiff, a breach of that duty, and that the breach of that duty was the proximate cause of damages suffered by the plaintiff. *P.W. v. Kansas Dept. of SRS,* 255 Kan. 827, 831, 877 P.2d 430 (1994). Usually, a determination of the presence or absence of negligence should be left to the trier of fact. *Stetler v. Fosha,* 9 Kan. App. 2d 519, 522, 682 P.2d 682, *rev. denied* 236 Kan. 877 (1984); see also *Schmeck v. City of Shawnee,* 232 Kan. 11, 27, 651 P.2d 585 (1982) (negligence, contributory negligence, and proximate cause are all issues for the jury's determination).

A fundamental rule of tort analysis is that actionable negligence must be based on a breach of duty. *Calwell v. Hassan,* 260 Kan. 769, 777, 925 P.2d 422 (1996). The plaintiff is required to prove the existence of a duty owed to him or her by the defendant. *P.W.,* 255 Kan. at 831. The existence of a legal duty is a question of law

to be determined by the court. *McGee v. Chalfant,* 248 Kan. 434, 437, 806 P.2d 980 (1991).

"When a negligence claim is asserted against a governmental agency, the court must consider the so-called " 'public duty doctrine.' " That doctrine establishes the general principle that a governmental agency owes duties to the public at large rather than to individuals. Under this doctrine, the fact the governmental entity owes a legal duty to the public at large does not establish a basis for an individual to claim the agency owed a legal duty to him or her personally. No duty exists unless it is established that the agency owed a special duty to the injured party." *Kirk v. City of Shawnee,* 27 Kan. App. 2d 946, Syl. ¶ 3, 10 P.3d 27, *rev. denied* 270 Kan. 898 (2000).

Generally, the public duty doctrine provides that law enforcement duties are owed to the public at large and not to any specific person. *Conner v. Janes,* 267 Kan. 427, 429, 981 P.2d 1169 (1999) (an officer is immune from claims arising out of the performance or nonperformance of the officer's general duties under the public duty doctrine). In his petition, Lamb avers that Patrolman Albers was, "at all times relevant hereto," acting within the scope and course of his employment as a highway patrol officer for the State.

The public duty doctrine has been applied to "policing functions." See, *e.g., Kirk,* 27 Kan. App. 2d at 950-52. In *Robertson v. City of Topeka,* 231 Kan. 358, 363, 644 P.2d 458 (1982), the Supreme Court noted that the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large. Based on the petition, Albers left his vehicle in pursuit of a fleeing felon who had attempted to enter a locked civilian vehicle. Albers' conduct was undertaken in the interest of protecting the public welfare. See *Mills v. City of Overland Park,* 251 Kan. 434, 446, 837 P.2d 370 (1992) (it is well known that law enforcement's duty to protect the public welfare is a public duty).

Lamb asserts that the defendants owed him a statutory duty, according to K.S.A. 8-1573, not to leave the patrol vehicle running with the keys in the ignition. K.S.A. 8-1573 reads:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key from the ignition, effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway."

Lamb points to *George v. Breising*, 206 Kan. 221, 477 P.2d 983 (1970), in support of his contention that Albers owed him a statutory duty under K.S.A. 8-1573 because he was a foreseeable plaintiff under the attendant circumstances. In *George*, a pedestrian who was struck and injured by a stolen automobile sued the owner/operator of a private automobile garage repair business. The plaintiff charged the business owner with negligence for leaving the keys in the automobile while it was parked on the private grounds of the defendant's place of business. The court considered whether the "independent intervening act" of the car thief was reasonably foreseeable. 206 Kan. at 227. Ultimately, the court rejected the plaintiff's argument that the garage owner should be held liable under the circumstances, relying upon the legal principal that "failure to anticipate a criminal act is not negligence. [Citation omitted.]" 206 Kan. at 228.

Lamb argues that the *George* court mentions that no statute was applicable to that case because the previous version of K.S.A. 8-1573 had not been adopted at the time of the accident, the issue had not been raised by the appellant, and the statute related only to unattended vehicles parked on a public thoroughfare. Lamb contends that these statements by the *George* court "impl[y] that the Court believed this statute imposed a duty upon the defendant to the plaintiff, if raised and if the negligent act had occurred after this statute became effective."

For further support of his claim that an unattended motor vehicle statute supports a theory that the harm caused by third persons involving unattended automobiles may be foreseeable, Lamb cites *Vining v. Avis Rent-A-Car Systems, Inc.*, 354 So. 2d 54 (Fla. 1977), *reh. denied* (1978). In *Vining*, the Florida Supreme Court considered whether a car owner who violated Florida's Unattended Motor Vehicle statute by leaving his vehicle unlocked with the key in the ignition was liable for the conduct of the thief who stole the car and subsequently injured a third party while negligently operating the stolen vehicle. The *Vining* court rejected the principle that an intervening criminal act automatically breaks the chain of causation as a matter of law, determining that "such a holding would serve to bar recovery for all injured parties under Florida's

'Unattended Motor Vehicle' statute because the criminal act of stealing the car would always precede the plaintiff's injury. This approach would effectively *deny relief to those members of the general public* that the statute was intended to protect." (Emphasis added.) 354 So. 2d at 56.

The *Vining* court cited the New Jersey Superior Court decision, *Zinck v. Whelan,* 120 N.J. Super. 432, 294 A.2d 727 (1972), overruled in part *Hill v. Yaskin,* 138 N.J. Super. 264, 350 A.2d 514 (1976), where the court reasoned

"that the key to duty, negligence and proximate cause when keys are left in an unlocked motor vehicle is the foreseeability to a reasonable man of an unreasonable danger presented to other motorists. If the danger is foreseeable, then

'(A) *duty arises toward the members of the public* using the highways, its breach is negligence, and the injury is the proximate result of the breach, or so a jury should be permitted to find.' " (Emphasis added.) 354 So. 2d at 55.

Both cases, *Vining* and *Whelan,* make it clear that the duty to comply with the unattended motor vehicle statute is one which "arises toward the members of the public." This reasoning supports the district court's decision that Albers and the State did not owe Lamb an individualized duty.

"Cities and other governmental bodies have broad police powers to enact ordinances which regulate and restrict activities in the interest of the health, safety, and welfare of their citizens. [Citation omitted.] It is well settled that governing bodies may properly exercise their police power to limit, control, or regulate the use of public roadways to promote the safety and general welfare of the people. [Citations omitted.]" *State v. Risjord,* 249 Kan. 497, 501, 819 P.2d 638 (1991).

Negligence liability attaches to an officer only when he or she breaches a specific affirmative duty owed to a particular person. *Conner,* 267 Kan. at 429. "Absent some special relationship with or specific duty owed to an individual, liability will not lie for damages. [Citation omitted.]" *McCormick v. Board of Shawnee County Comm'rs,* 272 Kan. 627, 648, 35 P.3d 815 (2001), *cert. denied sub nom. McCormick v. Long,* 537 U.S. 841 (2002).

Lamb does not argue that a special relationship existed between either the defendants and the suspect or between the defendants and himself. The facts in Lamb's petition do not suggest that the suspect was in the care, custody, or control of Trooper Albers at

the time of Lamb's injury; instead, Albers and the suspect were vying to gain control of the patrol vehicle. In considering the relationship existing between the agency and the injured person, Deputy Lamb was acting as a law enforcement officer. According to the facts in Lamb's petition, he was well apprised of the situation and had been assisting other "agency" personnel in apprehending the suspect. Lamb does not allege, and reason would not support, that Patrolman Albers owed a duty to warn Deputy Lamb about or protect him from the suspect. Deputy Lamb was injured as he approached the patrol vehicle as a law enforcement officer attempting to assist in the capture of the suspect.

Without a special relationship, our Supreme Court has stated that there is no duty to control the conduct of a third party to prevent harm to others. *Schmidt v. HTG, Inc.*, 265 Kan. 372, 387-90, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998) (holding no special relationship existing between a parolee and his parole officer by which to create a duty on the officer to warn others about the parolee's status or propensities).

Lamb vainly cites *Robertson v. City of Topeka* as support for a special duty:

"A special relationship or specific duty has been found to exist when an informant is endangered because of his assistance, [citation omitted,] or when one who creates a foreseeable peril, not readily discoverable, fails to warn. *Johnson v. State of California*, 69 Cal. 2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968)." 231 Kan. at 364.

In *Robertson*, the Kansas Supreme Court dismissed a negligence action against the city and three police officers. The plaintiff had summoned the police to his residence and asked that a trespasser be removed. The plaintiff told the officers that the trespasser was intoxicated and intended to burn the house down. Instead of removing the trespasser, the officers directed the plaintiff to leave the house. Fifteen minutes later, the plaintiff's house burned down. The Kansas Supreme Court found that no special relationship or specific duty existed between the officers, the city, and the plaintiff. Accordingly, liability could not flow to the officers or to the city because no duty existed. 231 Kan. at 363.

Lamb argues that a specific duty was created by Patrolman Albers' conduct in leaving his car unattended, running, and with his driver-side door open. Lamb maintains that the immediate access to the patrol vehicle created a foreseeably dangerous situation to all officers within close proximity. Albers failed to warn of the "increased danger," which was not otherwise "readily discoverable" by the other officers.

When Lamb was injured, he was acting as a law enforcement officer who had participated in the pursuit of the suspect and knew of the suspect's dangerous propensities just as did Albers. Moreover, Albers was in the midst of an attempt to apprehend the fleeing suspect when he left the motor running and the driver-side door of his vehicle open; he did not negligently allow the suspect to remain in the vehicle. Lamb knew that the fleeing suspect entered Albers' highway patrol vehicle. In his brief, Lamb states that Albers "then jumped in his vehicle on top of the suspect." "Either Albers, or the suspect, or both, were attempting to operate the vehicle when it was placed into drive, causing the vehicle to lurch forward." Lamb was injured when struck by the open driver-side door. Lamb's own account belies his argument that Albers created a "not readily discoverable" peril "for which he failed to warn."

The statutory duty to comply with K.S.A. 8-1573 was one owed to the public. Lamb does not contend a special relationship existed upon which duty was predicated. Moreover, based on facts in the petition, Albers did not create a "not readily discoverable" yet foreseeable peril for which he failed to warn. Hence, Lamb has failed to establish that Albers owed him an individualized duty. The court correctly dismissed the petition.

*Kansas Tort Claims Act*

K.S.A. 2001 Supp. 75-6103(a) of the Kansas Tort Claims Act (KTCA) states:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

K.S.A. 2001 Supp. 75-6104(a)-(w) provides the various exceptions to liability.

When construing the KTCA, courts have taken an open-ended approach to governmental liability. Liability is the rule for negligent conduct, while immunity is the exception. *Collins v. Board of Douglas County Comm'rs*, 249 Kan. 712, 720, 822 P.2d 1042 (1991). The governmental entity has the burden of establishing entitlement to any of the exceptions set forth in the KTCA. *Nero v. Kansas State University*, 253 Kan. 567, 585, 861 P.2d 768 (1993). When established, an exception to liability constitutes a jurisdictional bar. *Carpenter v. Johnson*, 231 Kan. 783, 786, 649 P.2d 400 (1982).

Albers did not owe a duty to Lamb. Accordingly, both Albers and the State are afforded immunity from "any claim which is limited or barred by any other law or which is for injuries or property damage against an officer, employee or agent where the individual is immune from suit or damages." K.S.A. 2001 Supp. 75-6104(i).

Affirmed.