# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**HEATHER HUMPHREY,**
**Individually, and as the Next Friend of Ozzmond Michael,**
**a Juvenile, and as Administratrix of the**
**Estate of Raymond Dale Michael,**
**Petitioner**

**FILED**
**May 21, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 17-0885** (Marion County 16-C-43)

**WESTCHESTER LIMITED PARTNERSHIP, d/b/a**
**WESTCHESTER VILLAGE,**
**John Doe 2, an employee of Westchester Village, and**
**Jane Doe 2, an employee of Westchester Village,**
**Respondents**

## MEMORANDUM DECISION

Petitioner Heather Humphrey ("plaintiff") appeals the circuit court's August 30, 2017, order granting summary judgment in favor of Respondent Westchester Limited Partnership, d/b/a Westchester Village ("Westchester").[1] The plaintiff asserts that the circuit court erred by deciding questions of proximate cause, intervening cause, and/or superseding cause as a matter of law where genuine issues of material fact exist.[2] By contrast, Westchester argues that the circuit court correctly granted summary judgment in its favor "because the [plaintiff] presented no admissible evidence on the essential element of proximate cause."

After review and for the reasons stated herein, we affirm the circuit court's order granting summary judgment in favor of Westchester. Because we find no substantial question of law and no prejudicial error, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(c) of the Rules of Appellate Procedure.

---

[1] Plaintiff is represented by attorneys Stephen P. New, Amanda J. Taylor, and Tammy Bowles Raines. Westchester is represented by attorney Heather M. Noel.

[2] The plaintiff also argues that the circuit court erred by "misinterpreting and/or misapplying" our statutory and common law on a claim of negligence.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Raymond Dale Michael ("decedent") was struck and killed by a motor vehicle in a hit-and-run accident that occurred at approximately 2:00 a.m. on March 30, 2014, in Fairmont, West Virginia. The Fairmont Police Department concluded that the decedent, who had a .33 blood alcohol concentration ("BAC") at the time of his death, was likely lying down in the road when he was struck by the vehicle.

Cole Valentine, then nineteen years old, called the police at 2:00 p.m. on March 30, 2014. Mr. Valentine told the police that he was driving a friend, Carrie Bragg, then twenty years old, home from Goal Rush bar ("Goal Rush") when he struck what he believed to be a bag of trash in the road. Mr. Valentine was driving Ms. Bragg's car. He was not administered a blood test to determine his BAC because twelve hours had passed since the incident. He was subsequently charged with the felony offense of leaving the scene of an accident causing the death of another person.

Before arriving at Goal Rush on March 29, 2014, Ms. Bragg attended a fraternity dinner at Westchester, a restaurant/event venue.[3] During this dinner, Westchester served drinks provided by the fraternity to approximately one hundred attendees, who were mostly fraternity members, fraternity pledges, and their dates. Ms. Bragg attended the dinner as a fraternity member's date. She was driven to and from Westchester in a shuttle service provided by the fraternity. Ms. Bragg's car was never on the premises of Westchester on the evening of March 29, 2014, and it is undisputed that she did not drive to or from the venue. Following the dinner at Westchester, a fraternity pledge drove Ms. Bragg to Goal Rush. According to testimony from a Westchester employee, Lisa Schneider, the Westchester fraternity event ended at 11:00 p.m. on March 29, 2014.

Mr. Valentine had no affiliation with the fraternity. He stated that he did not attend the dinner at Westchester and did not talk to or see Ms. Bragg until she arrived at Goal Rush. Mr. Valentine claimed that he played pool at Goal Rush but did not drink alcohol there. Instead, he admitted to drinking two beers at a park and ride at 10:00 p.m. before arriving at Goal Rush. Mr. Valentine's assertions were corroborated by Ms. Bragg who testified that she did not see Mr. Valentine drink alcohol at Goal Rush and that she did not believe he was intoxicated. After spending a few hours at Goal Rush, Ms. Bragg asked Mr. Valentine if he could give her a ride home. Thereafter, Mr. Valentine and his friends, along with Ms. Bragg, left Goal Rush sometime before 2:00 a.m. on March 30, 2014. One of Mr. Valentine's friends drove Ms. Bragg and Mr. Valentine to Ms. Bragg's employer's parking lot to retrieve her car. Upon arriving at this parking lot, Mr. Valentine and Ms. Bragg got into her car and Mr. Valentine proceeded to drive her home. It was during the ride home that Mr. Valentine struck the decedent.

---

[3] According to the circuit court, Westchester is a private club with a liquor license from the West Virginia Alcohol and Beverage Commission.

Plaintiff Heather Humphrey, on behalf of the decedent's estate, filed a wrongful death suit against Goal Rush and Westchester.[4]  The plaintiff alleged that Mr. Valentine drank alcohol at Goal Rush to the point of intoxication, and that he ran over the decedent in Ms. Bragg's car.  The plaintiff alleged that by serving alcohol to Mr. Valentine, Goal Rush negligently contributed to the decedent's death.[5]  The plaintiff's negligence claim against Westchester alleged that Mr. Valentine drank alcohol at both Westchester and Goal Rush to the point of intoxication, that he later ran over the decedent in Ms. Bragg's car, and that, by negligently serving alcohol to Mr. Valentine, Westchester and Goal Rush contributed to the decedent's death.

Westchester moved for summary judgment, asserting that Mr. Valentine was not at the fraternity event on the night of the accident, and did not consume any alcohol at Westchester. Westchester noted that approximately twenty people had been deposed, including Mr. Valentine, Ms. Bragg, Mr. Valentine's friends, other attendees at Westchester, the bartender at Westchester, and investigators with the Fairmont Police Department.  Each of these witnesses either denied or stated that they had no reason to believe that Mr. Valentine was at Westchester on the night in question.

During the hearing on Westchester's motion for summary judgment, the circuit court found that there was no evidence to support the plaintiff's assertion that Mr. Valentine was present at Westchester.  Thus, it determined that Westchester could not have served Mr. Valentine alcohol.  Because it was undisputed that Mr. Valentine was not at Westchester, the circuit court expressed concern that there was no evidence connecting Westchester to the decedent's death.  However, the circuit court stated that there could be a cause of action against an establishment that serves alcohol to an underage person who negligently entrusts her keys to an intoxicated driver who then injures a third person.  Therefore, the circuit court denied Westchester's motion for summary judgment and allowed the plaintiff to amend her complaint to allege that Westchester served Ms. Bragg alcohol to the point of intoxication, and consequently, Ms. Bragg negligently entrusted her keys to Mr. Valentine, who was also intoxicated, and thus, Westchester negligently contributed to the decedent's death.  The circuit court's order set forth the following issues of fact that remained for jury determination:

(1) Westchester's duty with regard to preventing Carrie
Bragg, a citizen under the age of twenty-one (21) years, from

_____

[4] The plaintiff resolved her claims against Ms. Bragg and Mr. Valentine prior to filing the present lawsuit.

[5] According to the plaintiff, "Defendant Goal Rush, LLC, did not file a motion for summary judgment. However, the Circuit Court stayed this matter pending the present appeal, such that this matter could be tried on the merits as to all remaining parties following a decision by this Court."

3

being served and/or consuming alcohol to a state of intoxication while on its premises; (2) Westchester's alleged breach of that duty by allowing, knowingly or negligently, alcohol to be served to Carrie Bragg; (3) the proximate causation/foreseeability of an intoxicated Carrie Bragg's entrustment of her vehicle to another intoxicated person; (4) the proximate causation/foreseeability that such entrustment could cause the incident which resulted in the death of [the decedent]; and (4) [sic] the existence of any intervening or superseding causes.

The plaintiff filed a second amended complaint alleging that Mr. Valentine "and/or" Ms. Bragg were served alcohol at Westchester; that Westchester knew or should have known that Mr. Valentine "and/or" Ms. Bragg were intoxicated and intended to drive a motor vehicle; that Westchester took no action to prevent Mr. Valentine "and/or" Ms. Bragg from driving; and that Mr. Valentine "and/or" Ms. Bragg drove Ms. Bragg's car while intoxicated and struck and killed the decedent.

Westchester filed a motion for summary judgment on the plaintiff's second amended complaint on July 25, 2017, arguing that: (1) there was no genuine dispute that Mr. Valentine was driving the car that struck the decedent; (2) there was no genuine dispute that Mr. Valentine was not at Westchester on the night in question; and (3) no cause of action exists against Westchester for serving alcohol to Ms. Bragg when she was not the driver of the car, but allowed Mr. Valentine to drive her car.

The circuit court granted Westchester's motion for summary judgment on the plaintiff's second amended complaint. It found that there was no genuine issue of fact that Mr. Valentine was driving at the time of the accident and that the:

> undisputed evidence . . . demonstrates that [Mr.] Valentine was not present at Westchester on the evening of March 29 or early morning of March 30, 2014, prior to [the decedent's] death. [The plaintiff] has presented no evidence to create a genuine issue of material fact in that regard. Mr. Valentine, therefore, could not have been served alcohol by, or consumed any alcohol on the premises of Westchester and could not have become intoxicated as a result of its conduct.

The circuit court found that there is no recognized cause of action against one who allegedly sells, or serves, alcoholic beverages to an underage individual who did not injure herself or another through the operation of a motor vehicle, but who is alleged to have negligently entrusted a motor vehicle to another. Even if it were to recognize such a cause of action, the circuit court concluded that:

4

As a matter of law, the events that occurred after Carrie Bragg left Westchester, which resulted in the death of [the decedent], were so remote in time and so remote from any alleged acts or omissions on the part of Westchester as to be completely unforeseeable, and, therefore, the intervening negligence of Ms. Bragg and/or Mr. Valentine cut off any liability that Westchester might otherwise have incurred. There is no genuine issue of fact in this regard, and for this additional reason, Westchester is entitled to summary judgment on the second amended complaint.

After entry of the circuit court's order, the plaintiff filed the instant appeal.

## II. STANDARD OF REVIEW

We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We have also stated that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). With these standards as guidance, we consider the parties' arguments.

## III. ANALYSIS

On appeal, the plaintiff asserts that the circuit court erred by deciding questions of proximate cause, intervening cause, and/or superseding cause as a matter of law where genuine issues of material fact exist. The plaintiff argues that Westchester served alcohol to Ms. Bragg, an underage individual, who in turn negligently entrusted her car to another intoxicated individual, Mr. Valentine. According to the plaintiff, the circuit court "failed to appreciate the causation issue: whether an entity which unlawfully serves intoxicating beverages to a minor, and causes that individual to be intoxicated is responsible for injury or death to a third party caused by that minor's intoxication. Such causation determinations are for the trier of fact." Conversely, Westchester asserts that the circuit court correctly granted its motion for summary judgment because

[t]here is no evidence . . . from which a jury could have reasonably found that Westchester could reasonably have foreseen that Carrie Bragg might either drive her car while she was intoxicated; or negligently entrust it to another intoxicated person, because Ms. Bragg was not witnessed by any Westchester personnel in an intoxicated state, nor in the company of Cole Valentine. Further, the accident involving

5

[the decedent] occurred approximately three-and-a-half hours after Carrie Bragg left Westchester and after she had stopped off for approximately two-and-a-half hours at another establishment – Goal Rush – where she still did not have possession of her car. Furthermore, the accident occurred on the route from Carrie Bragg's place of employment to her home, and not on the route from Westchester to her home.

In the absence of any evidence to put Westchester on notice that Carrie Bragg might drive her own car that evening, let alone hand the keys of a car she did not have with her [to a third party] . . . no reasonable jury could find from the undisputed evidence in this case that Carrie Bragg's alleged consumption of alcoholic beverages on the premises of Westchester was the proximate cause of the death of [the decedent].

After review, we agree with Westchester and conclude that no rational trier of fact could find that Westchester's negligence—serving alcohol to Ms. Bragg—was a proximate cause of the decedent's death.

This Court has addressed our law on proximate cause in a number of cases. In syllabus point 2 of *McCoy v. Cohen*, 149 W.Va. 197, 140 S.E.2d 427 (1965), we held "[a] fundamental legal principle is that negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Additionally, "[p]roximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence." Syl. Pt. 3, *id*. This Court has also stated that "[t]he proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred." Syl. Pt. 5, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds by State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983).[6] Further, "[a] tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct." Syl. Pt. 13, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990). However, "[g]enerally,

---

[6] Proximate cause has also been defined as "that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." Syl. Pt. 3, in part, *Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65 (1950).

a willful, malicious, or criminal act breaks the chain of causation." *Yourtee v. Hubbard*, 196 W.Va. 683, 690, 474 S.E.2d 613, 620 (1996) (citation omitted).

This Court has held that "[t]he questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them." Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963). However, this Court has noted that when the facts are clear and susceptible of only one inference, a circuit court may decide issues of proximate cause and intervening cause as a matter of law. The Court, citing multiple cases from outside of our jurisdiction, discussed this issue in *Harbaugh v. Coffinbarger*, 209 W.Va. 57, 65-66, 543 S.E.2d 338, 346-47 (2000):

> In syllabus point six of *Cullip ex rel. Pitts v. Domann*, 266 Kan. 550, 972 P.2d 776 (1999), the court likewise clearly explained the distinction between issues of negligence to be decided by the jury and those to be determined as a matter of law: "Ordinarily, questions of negligence including proximate cause are questions of fact to be resolved by the trier of fact. However, where all the evidence relied upon by a party is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law." *Id.* at 779.

> Similarly, in *George v. Breising*, 206 Kan. 221, 477 P.2d 983 (1970), a case involving the theft of a vehicle left with a private garage for repairs, the court concluded as a matter of law that although the act of leaving the keys in the ignition was negligent, the intervening act of negligence of the car thief was the direct and proximate cause of the injury sustained by the plaintiff. *Id.* at 988–89; *see also Rodriguez v. Pro Cable Serv. Co.*, 266 A.D.2d 894, 697 N.Y.S.2d 440, 441 (N.Y.App. Div. 4 1999) (concluding that the issue of legal cause may be determined as a matter of law where the facts lead to only one rational conclusion); *Stephenson ex rel. Coley v. S.C. Johnson & Son, Inc.*, 168 Misc.2d 528, 638 N.Y.S.2d 889, 894 (N.Y.Sup.Ct.1996) (discussing breaking the chain of causation where intervening acts are extraordinary, not foreseeable, or independent).

Turning to the facts of the present case, the undisputed evidence established that (1) Westchester served alcohol to Ms. Bragg; (2) Ms. Bragg did not drive to or from Westchester; (3) Ms. Bragg's car was never at Westchester on the night in question; (4)

7

Ms. Bragg asked Mr. Valentine to drive her home in her car hours after leaving Westchester; and (5) there was insufficient evidence that Mr. Valentine was intoxicated.[7] We emphasize that no evidence was adduced placing Mr. Valentine at Westchester or establishing that Westchester served Mr. Valentine alcohol.

It is well-established that "[t]o be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Syl. Pt. 5, in relevant part, *Puffer v. Hub Cigar Store*, 140 W.Va. 327, 84 S.E.2d 145 (1954), *overruled on other grounds by Mallet v. Pickens*, 206 W.Va. 145, 522 S.E.2d 436 (1999) (citation and quotation omitted). Additionally, "[a] person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinarily prudent person." Syl. Pt. 6, *id.* The circuit court concluded that "the events that occurred after Carrie Bragg left Westchester, which resulted in the death of [the decedent], were so remote in time and so remote from any alleged acts or omissions on the part of Westchester as to be completely unforeseeable." We agree. The plaintiff has failed to produce sufficient evidence to show that Westchester could have reasonably anticipated that a person who was driven to and from its venue by a shuttle service, would go to another bar, ask a third party to retrieve her car from her employer's parking lot, negligently entrust her car to that third party, who would in turn strike an individual who, according to the police, was likely lying down in the roadway. Under the undisputed facts of this case, Westchester's negligence was not the "proximate cause of the injury complained of," nor was it "such as might have been reasonably expected to produce an injury." Syl. Pt. 5, in relevant part, *Puffer*.

The plaintiff argues that proximate causation may nevertheless be established pursuant to this Court's holding that "[i]n appropriate circumstances, one who sells beer or alcoholic beverages to a minor may reasonably be expected to foresee that the underage purchaser will share such beverages with others not of legal drinking age, who will, in turn, become intoxicated and cause injury to themselves or others." Syl. Pt. 15, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61. In syllabus point 16 of *Anderson*, this Court outlined some of the "appropriate circumstances" in which a court might find that a plaintiff's injuries were reasonably foreseeable due to the illegal sale of alcohol to a minor:

---

[7] The circuit court determined that "[t]he only evidence relating to Cole Valentine's consumption of alcohol is that he had drunk one or two beers at least four hours prior to the incident in which Ms. Bragg's vehicle struck [the decedent]; however, that is not sufficient evidence from which a jury could do anything more than speculate that Cole Valentine was intoxicated at the time he struck [the decedent] with Ms. Bragg's car." Based on our review of the record, we agree with the circuit court's conclusion.

8

Factors to be considered in determining whether a vendor of alcoholic beverages might reasonably foresee that someone other than an underage purchaser would consume the beverages include: (1) the quantity and character of the beverages purchased; (2) the time of day of the sale; (3) the vendor's observation of other persons on the premises or in a vehicle with the underage purchaser; (4) statements made by the purchaser; and (5) any other relevant circumstances of the sale or the vendor's knowledge.

In *Anderson*, a beer distributorship sold a keg of beer to a minor. The minor shared the beer with a friend. Both of the minors became intoxicated. Eventually, the friend decided to drive and the minor who bought the beer rode along as a passenger. Thereafter, they were involved in a wreck and the minor who bought the beer was killed. In determining whether the beer distributor could be liable for illegally selling alcohol to the minor, this Court noted that other jurisdictions have held an establishment liable for the sale of alcohol to one minor who shares the alcohol with another minor, who in turn becomes intoxicated and causes an injury. 183 W.Va. at 89, 394 S.E.2d at 73. These jurisdictions operate under the theory that the establishment being held liable indirectly provided the alcohol to the minor who caused the injury, and thus are still liable for an "indirect sale" to a minor. Richard Smith, *A Comparative Analysis of Dramshop Liability and a Proposal for Uniform Legislation*, 25 J. Corp. L. 553, 561 (2000).

The Court in *Anderson* held that there was insufficient information in the record to determine whether it was reasonably foreseeable that the beer distributor's sale of beer to the deceased minor would result in his death. 183 W.Va. at 90, 394 S.E.2d at 74. The Court stated: "The parties' brief stipulation . . . does not contain any facts as to conversations between [the employee and the minor], whether [the driver] was present or nearby at the time of the purchases, what happened between the days the kegs were purchased and the date of the fatal accident . . . For this reason, the proximate cause question is still open and requires further factual development." *Id.*

Reviewing the present case pursuant to the factors set forth in *Anderson*, it is clear that it was not reasonably foreseeable that Westchester's act of providing alcohol to Ms. Bragg could have resulted in the death of the decedent. There was no evidence establishing that Ms. Bragg shared any of the alcohol she received at Westchester with Mr. Valentine. Thus, Westchester cannot be subject to liability for "indirectly" providing alcohol to Mr. Valentine. It is also undisputed that Mr. Valentine was not present at Westchester, that Ms. Bragg did not drive to or from Westchester, and that her car was never at Westchester. Therefore, even if Westchester knew that Ms. Bragg was intoxicated, it was not reasonably foreseeable that hours after leaving the fraternity dinner, she would

9

ask a third party, Mr. Valentine, to retrieve her car from her employer's parking lot and drive her home.

For the aforementioned reasons, we conclude that reasonable persons could not find, from the undisputed evidence, that Westchester's negligent conduct was a proximate cause of the decedent's death. We certainly do not condone Westchester's negligent conduct—serving alcohol to an underage person. However, we agree with the circuit court's conclusion that "the events that occurred after Carrie Bragg left Westchester, which resulted in the death of [the decedent], were so remote in time and so remote from any alleged acts or omissions on the part of Westchester as to be completely unforeseeable."[8] Therefore, the circuit court's August 30, 2017, order granting summary judgment in favor of Westchester is affirmed.

Affirmed.

---

[8] The plaintiff also argued that the circuit court erred by "misinterpreting and/or misapplying applicable West Virginia Code sections and/or West Virginia common law." The plaintiff argues that her claim against Westchester should survive summary judgment because Westchester breached its duty under both statutory and common law by providing alcohol to Ms. Bragg, who was under twenty-one years old. Under W.Va. Code § 60-7-12(a) (1996), "It is unlawful for any licensee . . . to: . . . (3) . . . permit the consumption of nonintoxicating beer, wine or alcoholic liquors on the licensee's premises, by any person less than twenty-one years of age." (This statute was amended in 2016, the amendments do not affect the outcome of this appeal.) The plaintiff further asserts that, under W.Va. Code § 55-7-9 (1923), in part, "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation[.]" Also, the plaintiff claims that she may recover under a common law negligence theory. *See Anderson v. Moulder*, 183 W.Va. at 85, 394 S.E.2d at 69 ("[A] common law negligence against the licensees arises by virtue of their alleged violation of the Nonintoxicating Beer Act[.]").

The plaintiff has established that Westchester breached a duty when it allowed Ms. Bragg to consume alcohol on its premises. However, regardless of whether Westchester's duty arises from statute or common law, the plaintiff must demonstrate that Westchester's breach of that duty was a proximate cause of the decedent's death. *See Bailey v. Black,* 183 W.Va. 74, 76, 394 S.E.2d 58, 60 (1990) ("We have held that proximate cause must be proved under Code 55-7-9 [1923]);" Syl. Pt. 3, in part, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 ("To be actionable, negligence must be the proximate cause of the injury[.]"). Therefore, because we conclude that the plaintiff has failed to establish that Westchester's negligence was a proximate cause of the decedent's death, we find that the plaintiff's second assignment of error also fails.

10

ISSUED:  May 21, 2019

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**
Justice Margaret L. Workman


**WORKMAN, J., dissenting:**

I dissent to the circuit court and majority's invasion of the jury's province by affirming summary judgment in this case. It does so under the guise of the foreseeability of the particular facts of this case, despite the fact that this Court has stated that "[t]he *jury* has the more specific job of considering the likelihood or foreseeability of the injury sustained under the particular facts of [a] case[.]" *Strahin v. Cleavenger*, 216 W. Va. 175, 185, 603 S.E.2d 197, 207 (2004) (emphasis added).  More specifically, this Court has made clear that "[g]enerally, when a vendor negligently sells intoxicating beverages to a minor, *it is foreseeable that such minor will* consume all or part of such beverages, become intoxicated, and, as a result, *injure himself or a third party*." *Anderson v. Moulder*, 183 W. Va. 77, 88, 394 S.E.2d 61, 72 (1990).  Nonetheless, the majority focuses on the very specific litany of facts which gave rise to this accident to justify summary judgment, despite the fact this Court has held that *it is foreseeable* that an intoxicated minor will injure himself or others.  The very specific potential means by which an intoxicated minor may perpetrate that injury are myriad; there is simply no requirement that the *precise* mechanism of injury must be foreseeable to a negligent tortfeasor to allow the issue to reach the jury.  Therefore, the issue of causation, particularly in light of respondent Westchester's unmistakable negligence and violation of statute, should have been resolved by the jury under principles of comparative negligence.

In this case, respondent Westchester Limited Partnership ("Westchester") unlawfully served alcohol to Carrie Bragg, a minor, causing her to become intoxicated.  Ms. Bragg subsequently entrusted her vehicle to Cole Valentine, who had also been drinking.  Mr. Valentine then struck and killed Raymond Dale Michael, petitioner's decedent.  These facts are undisputed.  The majority preoccupies itself with the manner in which Ms. Bragg arrived at the party at Westchester, her continued subsequent drinking, and supposition about the timing and number of alcoholic beverages Mr. Valentine had consumed.  From this, it determines that none of the particular nuances of these facts could have been specifically anticipated by Westchester and therefore affirms summary judgment. ("The plaintiff has failed to produce sufficient evidence to show that

11

Westchester could have reasonably anticipated that a person who was driven to and from its venue by a shuttle service, would go to another bar, ask a third party to retrieve her car from her employer's parking lot, negligently entrust her car to that third party, who would in turn strike an individual . . .").  Furthermore, there is no evidence that Westchester had any knowledge whatsoever of Ms. Bragg's transportation arrangements.

There is little question that serving alcohol to underaged individuals creates—in itself and without more—a risk of harm.  *See Anderson*, 183 W. Va. at 84, 394 S.E.2d at 68 ("[B]ecause of their immaturity, such persons are less capable of handling the intoxicative and addictive effects of alcohol and, therefore, present a danger to themselves and to others.").  This danger is most demonstrable in his or her lack of judgment.  That an intoxicated minor might demonstrate that lack of judgment in entrusting his or her vehicle to an incompetent driver is not only foreseeable—it is probable.  Negligent entrustment is established where "[a]n owner [] entrusts his motor vehicle to a person whom he knows, or from the circumstances is charged with knowing, to be incompetent or unfit to drive" and inflicts injury.   Syl. Pt. 12, *Payne v. Kinder*, 147 W. Va. 352, 353, 127 S.E.2d 726, 729 (1962).  Therefore, when an establishment negligently and unlawfully serves alcohol to a minor who then negligently entrusts his or her vehicle to an incompetent driver who then injures another, a nearly unbroken chain of causation is created.  The particular twists, turns, and stops with which the majority is preoccupied, but which a jury may conclude is merely incidental to this chain, do not necessarily serve to break it.

The Court has held that "[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Syl. Pt. 1, *Overbaugh v. McCutcheon,* 183 W.Va. 386, 396 S.E.2d 153 (1990) (internal quotations and citations omitted).  Respondent Westchester's affirmative conduct in serving to an under-aged individual, as a matter of law, then created a duty upon it to prevent the threat of harm she presented.  Whether it was derelict in that duty was for the jury to assess, along with consideration of the chain of causation.[9]  *See Dodge v. Victory Markets Inc*., 606 N.Y.S.2d 345, 348 (N. Y. App. Div. 1993) (permitting cause of action based on sale to intoxicated minor who negligently entrusted vehicle causing injury).  It is

---

[9] "'Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person.'"  *Marcus v. Staubs*, 230 W. Va. 127, 137, 736 S.E.2d 360, 370 (2012) (quoting *Dicken v. Liverpool Salt & Coal Co*., 41 W.Va. 511, 23 S.E. 582 (1895)). Certainly the same may be said of causation:  whether particular facts support a finding of proximate cause or intervening cause is also necessarily "relative to some circumstances of time, place, manner, or person." *Id*.  It is the role of the jury to evaluate the "time, place, manner [and] person," and ascertain, in its collective wisdom, whether proximate cause exists, and if so, the degree of fault.

12

of literally no consequence that Westchester had no specific knowledge of the travel arrangements of each of its particular guests, their anticipated subsequent travel and social plans, or of the specific means by which the intoxicated minor it served would injure another. The risk of harm created when under-aged individuals are served alcohol is so obvious and plentiful, that removing liability due to the lack of exquisitely specific details as to how that harm is precisely going to be perpetrated makes little sense.

Moreover, Westchester's duty to prevent the harm its unquestionably negligent conduct created is not necessarily extinguished by an intervening or concurrent cause. Both the circuit court and majority intimate that Mr. Valentine's alleged drinking and driving presented an intervening cause, which extinguished Westchester's original negligence. However, "[a] tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct." Syl. Pt. 13, *Anderson*, 183 W.Va. 77, 394 S.E.2d 61. As well-articulated by another court:

> For an intervening cause to be a superseding cause of the injuries it must be a cause which could not have been reasonably foreseen or anticipated by the defendant. Stated differently, in order for an intervening cause to supersede the original negligence, *the intervening cause must be so extraordinary that the defendant could not have reasonably anticipated that the cause would intervene*.

*City of Phoenix v. Schroeder*, 405 P.2d 301, 308 (Ariz. Ct. App. 1965) (emphasis added). *See also Adams v. Rhodia, Inc*., 983 So. 2d 798 (La. 2008) (observing foreseeable intervening forces are within scope of original risk, and therefore of original tortfeasor's negligence). As indicated above, that an intoxicated minor might entrust her car to another is not merely foreseeable, it is *likely*. There is certainly nothing "extraordinary" about it— in fact, society encourages it. That she may do so negligently, due to her intoxication, is patently obvious.

This Court has repeatedly held that "'[t]he questions of negligence, contributory negligence, *proximate cause*, *intervening cause* and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them.' Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963)." Syl. Pt. 10, *Harbaugh v. Coffinbarger*, 209 W.Va. 57, 543 S.E.2d 338 (2000) (emphasis added). Despite its protestations to the contrary, the majority's affirm of the circuit court's entry of summary judgment is not based on the fact that a *jury* could not reach differing conclusions from these facts; rather, it is clearly based upon the *majority's* conclusions regarding those facts. However, "[t]he circuit court's function at the summary judgment stage is not to weigh the

13

evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Because both the circuit court and majority improperly invade this quintessential jury issue, I respectfully dissent.